IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  19-cv-3349

HONEYWELL INTERNATIONAL INC.,
a Delaware corporation,

       Plaintiff,

v.

ELDER CONSTRUCTION, INC.,

a Colorado corporation.

       Defendant.

---

## COMPLAINT

---

Honeywell International Inc., by and through its undersigned attorneys, states its complaint as follows:

## **INTRODUCTION**

1.     This matter arises out of Defendant's failure to properly design and construct certain laboratories in Broomfield, Colorado, according to required temperature and humidity standards. Plaintiff has repeatedly notified Defendant of its failures on this construction project, which Plaintiff has not satisfactorily cured. Defendant has suffered and continues to suffer damages, including but not limited to those relating to the remediation of this project and inability to utilize the Project (as hereinafter defined) laboratory space as intended and required by the Contract.

## PARTIES, JURISDICTION, AND VENUE

2.      Honeywell International Inc. ("Honeywell" or "Plaintiff") is a Delaware corporation, with a principal place of business at 300 South Tryon Street, Charlotte, North Carolina, 28202.

3.      Upon information and belief, Elder Construction, Inc. ("Elder" or "Defendant") is a Colorado corporation, with a principal place of business at 3431 N. Prospect Street, Colorado Springs, Colorado 80907, 4870 Centennial Blvd., Colorado Springs, Colorado 80919, or 7380 Greendale Road, Windsor, Colorado 80550.

4.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the Plaintiff and Defendant are citizens of different States.

5.      The actions and omissions giving rise to this action occurred in Broomfield County, Colorado.  Venue is therefore proper in this district under 28 U.S.C. § 1391(a), (c).

6.      Further, per the terms of the applicable agreement between the parties, "[t]he method of binding dispute resolution is litigation in a court of competent jurisdiction," and "[t]he Contract shall be governed by the law of the place where the Project is located." (**Exh. A** at Sections 1.3 and 15.1.)

## FACTUAL BACKGROUND

7.      On or about September 15, 2016, Honeywell and Elder entered into an "Owner and Design-Builder" contract (the "Contract") (**Exh. A**), for design and construction services relating to a project located at 303 S. Technology Ct., Broomfield, Colorado 80021 (aka 303 Technology Drive – Project 9-Iron) (the "Project").

8.      Subsequently, on or about May 31, 2017, Honeywell and Elder executed an "Amendment", which among other things, amended the original contract value to include the Phase 2 Guaranteed Maximum Price ("GMP") in the amount of $2,792,564.12 for a total contract value of $6,120,376.00.  The Amendment is included in **Exh. A**.

9.      The Contract defines the "Owner" as Honeywell and the "Design-Builder" as Elder. (Id. at Sections 1.4.7 and 1.4.8.)

10.     The Contract defines the "Project" as the "total design and construction of which the Work performed under the Design-Build Documents may be the whole or a part . . . ." and the "Work" as the "design, construction and related services required to fulfill the Design-Builder's obligations under the Design-Build Documents . . . ." (Id. at Sections 1.4.4 and 1.4.3.)

11.     Among other requirements, the Contract mandates that:

a.      "[T]he Design-Builder shall provide and pay for . . . all . . . items and facilities of every kind necessary to complete the Project in the manner and time frame required under the Design-Build Documents." (Id. at Section 1.6.)

b.      "The Design Builder shall perform the Work in accordance with the Design-Build Documents. The Design-Builder shall not be relieved of the obligation to perform the Work in accordance with the Design-Build Documents by the activities, tests, inspections or approvals of the Owner." (Id. at Section 3.1.3.)

c.      "The Design-Builder shall be responsible to the Owner for acts and omissions of the Design-Builder's employees, Architects, Consultants, Contractors, and their agents and employees, and other persons or entities performing portions of the Work." (Id. at Section 3.1.4.)

d.  "The Design-Builder further warrants that the Work will conform to the

   requirements of the Design-Build Documents and will be free from defects . . . ."

   ("express warranty") (<u>Id.</u> at Section 3.1.12.)

e.  "The Owner has the authority to reject Work that does not conform to the Design-

   Build Documents." (<u>Id.</u> at Section 7.6.)

f.  "If [the Design-Builder's] Work is not in accordance with the Design-Build

   Documents, the costs of uncovering and correcting the Work shall be at the

   Design-Builder's expense." (<u>Id.</u> at Section 11.1)

g.  "[I]f, within one year after the date of Substantial Completion of the Work . . . or

   after the date for commencement of warranties established under Section 9.9.1, or

   by terms of an applicable special warranty required by the Design-Build

   Documents, any of the Work is found to be not in accordance with the

   requirements of the Design-Build Documents, the Design-Builder shall correct it

   promptly after receipt of written notice from the Owner to do so . . . ." ("repair

   warranty")  (<u>Id.</u> at Section 11.2.21)

12.     During the development of the Project design, Elder undertook to meet various

temperature and humidity control requirements in certain laboratory areas, including that room

temperature remain at 70 degrees Fahrenheit with a deviation of no more than +/-0.36 degrees

Fahrenheit, with relative humidity at 40% with a deviation of no more than +/- 5%.

13.     In December 2017, shortly after Project completion, Honeywell discovered that

three areas of the Project failed to meet these temperature and humidity control requirements,

specifically, three laboratories referred to as "H-Lab-2" (2,148 Square Feet), "CAT Lab 1" (1,545 Square Feet), and "CAT Lab 2" (1,525 Square Feet).

14.     Temperature in these areas varied more than +/- 5F, with no apparent humidity control.

15.     In accordance with, among other things, the Contract repair warranty, Honeywell notified Elder of this failure shortly after discovery and provided Elder opportunity to correct the condition.

16.     Elder made several attempts to correct the condition in 2018, without success.

17.     In or about August 2018, Elder also proposed a re-design of these portions of the Project that, by its own admission, would not have resulted in the three laboratories meeting the temperature and humidity control requirements.

18.     On December 17, 2018, Honeywell Vice President of Global Real Estate Daniel Kirschner, sent a letter to Elder Vice President Patrick Elder, in which Mr. Kirschner informed Mr. Elder that, in accordance with the Contract, Honeywell would "be retaining a separate consultant to re-design the lab HVAC system to meet the Project's temperature and humidity control requirements" (the "December 2018 Letter") (**Exh. B**).

19.     The December 2018 Letter summarized much of the previous communications and efforts relating to these issues and explained that while Honeywell provided Elder with an "opportunity to correct the condition," the proposed corrections by Elder admittedly failed to meet the temperature and humidity control requirements.  As such, Mr. Kirschner advised that "[a]fter having provided Elder with ample opportunity to correct, Honeywell has no choice but to

proceed under Section 7.9 of the Contract and engage another consultant who is capable of meeting the design requirements." (Id.)

20.     The December 2018 Letter further explained that Honeywell would "hold Elder responsible for all costs it incurs in the new design and construction, in addition to the loss of productivity and profit of such areas being rendered unusable while the repairs are being performed," while emphasizing that "Honeywell would like to amicably resolve its claim against Elder." (Id.)

21.     By correspondence dated June 13, 2019, Mr. Kirschner again wrote to Mr. Elder, providing a formal "Notice of Claim" pursuant to the Colorado Construction Defect Action Reform Act, C.R.S.A. § 13-20-801, et seq. (the "CDARA") (the "June 2019 Notice of Claim") (**Exh. C**).

22.     The June 2019 Notice of Claim further explained that one of the two laboratories had already been remediated at a cost of $490,660, and that the remediation of the other two labs would cost approximately $2.5 million, in addition to other costs. Id.

23.     In response to the June 2019 Notice of Claim, Elder performed an inspection on September 26, 2019.

24.     Pursuant to the CDARA, Elder had 45 days from the inspection to make an offer to settle Honeywell's claim by payment of a sum certain or agreeing to remedy the claimed defect described in the Notice of Claim.

25.     The time within which Elder had to make an offer to settle under the CDARA has elapsed, and Elder has failed to make Honeywell any offer to settle.

26.     Honeywell has complied with all threshold statutory requirements to bringing this action, including all notice and inspection requirements articulated in the CDARA.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

27.     Honeywell incorporates the foregoing allegations as if fully set forth herein.

28.     The Honeywell/Elder Contract is valid and enforceable.

29.     Honeywell has complied with the terms of the Contract.

30.     Elder failed to perform as required under the Contract and is therefore in breach.

31.     Honeywell has notified Elder of its breach of contract, which has not been cured.

32.     Honeywell has been and will continue to be damaged as a result of Elder's breach, in an amount to be proven at trial, including but not limited to costs of remediation and loss of use.

**WHEREFORE,** Plaintiff Honeywell demands that this Court enter judgment in its favor and against Defendant Elder and award Honeywell the following:

(a) Damages caused by Defendant's breaches;

(b) Pre- and post-judgment interest at the statutory rate;

(c) Costs and attorneys' fees as permitted by contract and/or statute; and

(d) Any other relief that the Court deems just and appropriate.

## SECOND CLAIM FOR RELIEF
### (Breach of Express Warranty)

33.     Honeywell incorporates the foregoing allegations as if fully set forth herein.

34.     The Honeywell/Elder Contract includes an express warranty, in which Elder "warrant[ed] that the Work will conform to the requirements of the Design-Build Documents and will be free from defects."

35.     Elder has failed to comply with the terms of this express warranty.

36.     Elder has notified Elder of its breach of express warranty, which has not been cured.

37.     Honeywell has been and will continue to be damaged as a result of Elder's breach, in an amount to be proven at trial, including but not limited to costs of remediation and loss of use.

**WHEREFORE,** Plaintiff Honeywell demands that this Court enter judgment in its favor and against Defendant Elder and award Honeywell the following:

(a) Damages caused by Defendant's breaches;

(b) Pre- and post-judgment interest at the statutory rate;

(c) Costs and attorneys' fees as permitted by contract and/or statute; and

(d) Any other relief that the Court deems just and appropriate.

### THIRD CLAIM FOR RELIEF
#### (Professional Negligence)

38.     Honeywell incorporates the foregoing allegations as if fully set forth herein.

39.     Elder owed a duty to Honeywell to design and construct the Project in accordance with its representations and industry standards.

40.     Elder breached its duty to Honeywell via its failure to adhere to Project temperature and humidity requirements.

41.      Elder's breach caused Honeywell injury, which has and will continue to damage Honeywell in an amount to be proven at trial, including but not limited to costs of remediation and loss of use.

**WHEREFORE,** Plaintiff Honeywell demands that this Court enter judgment in its favor and against Defendant Elder and award Honeywell the following:

(a)  Damages caused by Defendant's breaches;

(b)  Pre- and post-judgment interest at the statutory rate;

(c)  Costs and attorneys' fees as permitted by contract and/or statute; and

(d)  Any other relief that the Court deems just and appropriate.

## JURY DEMAND

Honeywell hereby demands a jury on all issues so triable.

Respectfully submitted this 26th day of November, 2019.

DORSEY & WHITNEY LLP

*s/ Stephen D. Bell*
Stephen Bell
1400 Wewatta Street, Suite 400
Denver, Colorado 80202-5549
Telephone: (303) 629-3400
Email: bell.steve@dorsey.com

Peter J. Torcicollo (CO admission pending)
Lisa Lombardo (CO admission pending)
Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102
Telephone:  (973) 596-4500
Email:  PTorcicollo@gibbonslaw.com;
         llombardo@gibbonslaw.com

*Attorneys for Plaintiff Honeywell International Inc.*

9

# Exhibit A
# redacted

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399



# AIA® Document A141™ – 2014

## Standard Form of Agreement Between Owner and Design-Builder

**AGREEMENT** made as of the Twelfth (12th) day of September, 2016.

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

Honeywell International, Inc
Corporate Procurement
115 Tabor Rd, Morris Plains, NJ 07950

and the Design-Builder:
*(Name, legal status, address and other information)*

Elder Construction, Inc.
3431 N Prospect Street
Colorado Springs, CO 80907

for the following Project:
*(Name, location and detailed description)*

303 Technology Drive – Project 9-Iron
303 S. Technology Ct.
Broomfield, CO 80021

The Owner and Design-Builder agree as follows.



**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Consultation with an attorney is also encouraged with respect to professional licensing requirements in the jurisdiction where the Project is located.

**ELECTRONIC COPYING** of any portion of this AIA® Document to another electronic file is prohibited and constitutes a violation of copyright laws as set forth in the footer of this document.

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                                                                     (1886074471)

## TABLE OF ARTICLES

1        GENERAL PROVISIONS

2        COMPENSATION AND PROGRESS PAYMENTS

3        GENERAL REQUIREMENTS OF THE WORK OF THE DESIGN-BUILD CONTRACT

4        WORK PRIOR TO EXECUTION OF THE DESIGN-BUILD AMENDMENT

5        WORK FOLLOWING EXECUTION OF THE DESIGN-BUILD AMENDMENT

6        CHANGES IN THE WORK

7        OWNER'S RESPONSIBILITIES

8        TIME

9        PAYMENT APPLICATIONS AND PROJECT COMPLETION

10       PROTECTION OF PERSONS AND PROPERTY

11       UNCOVERING AND CORRECTION OF WORK

12       COPYRIGHTS AND LICENSES

13       TERMINATION OR SUSPENSION

14       CLAIMS AND DISPUTE RESOLUTION

15       MISCELLANEOUS PROVISIONS

16       SCOPE OF THE AGREEMENT

## ARTICLE 1   GENERAL PROVISIONS
### § 1.1 Owner's Criteria
This Agreement is based on the Owner's Criteria set forth in this Section 1.1.
*(Note the disposition for the following items by inserting the requested information or a statement such as "not applicable" or "unknown at time of execution." If the Owner intends to provide a set of design documents, and the requested information is contained in the design documents, identify the design documents and insert "see Owner's design documents" where appropriate.)*

**§ 1.1.1** The Owner's program for the Project is set forth on attached  **Exhibit C** – Scope of Work and **Exhibit D** Approved Project.

**§ 1.1.2** The Owner's design requirements for the Project and related documentation:  HSW Workplace Standards attached hereto as **Exhibit F**.

**§ 1.1.3** The Project's physical characteristics are as set forth on attached **Exhibit D**.

**§ 1.1.4** The Owner's anticipated Sustainable Objective for the Project, if any: None.

**§ 1.1.5** Incentive programs the Owner intends to pursue for the Project, including those related to the Sustainable Objective, and any deadlines for receiving the incentives that are dependent on, or related to, the Design-Builder's services, are as follows: None.

**§ 1.1.6** The Owner's budget for the Work to be provided by the Design-Builder will be provided by the Owner.

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                          (1886074471)

§ 1.1.7 The Owner's design and construction milestone dates:

  .1   Design phase milestone dates: October 31, 2016

  .2   Phased completion dates: _____

  .4   Substantial Completion date: February 17, 2017

  .5   Other milestone dates: _____

§ 1.1.8 The Owner requires the Design-Builder to retain the following Architect, Consultants and Contractors at the Design-Builder's cost:
*(List name, legal status, address and other information.)*

  .1   Architect

       YOW Architects PC
       115 S. Weber St., Suite 200
       Colorado Springs, CO 80903

  .2   Consultants

       MEP Engineering, Inc.
       6402 S. Troy Circle, Suite 100
       Centennial, CO 80111

  .3   Contractors

       Elder Construction, Inc.
       3431 N Prospect Street
       Colorado Springs, CO 80907

§ 1.1.9 Additional Owner's Criteria upon which the Agreement is based: None.

§ 1.1.10 The Design-Builder shall confirm that the information included in the Owner's Criteria complies with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities.

§ 1.1.10.1 If the Owner's Criteria conflicts with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Design-Builder shall notify the Owner of the conflict.

§ 1.1.11 If there is a change in the Owner's Criteria, the Owner and the Design-Builder shall execute a Modification in accordance with Article 6.

§ 1.1.12 If the Owner and Design-Builder intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions. Unless otherwise agreed, the parties will use AIA Document E203™–2013 to establish the protocols for the development, use, transmission, and exchange of digital data and building information modeling.

§ 1.2 Project Team
§ 1.2.1 The Owner identifies the following representative in accordance with Section 7.1.1:
*(List name, address and other information.)*
       Rob Wolter
       Honeywell
       Global Real Estate
       312-615-6262 (M)
       robert.wolter@honeywell.com

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA[®] Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA[®] Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                        (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

**§ 1.2.2** The persons or entities, in addition to the Owner's representative, who are required to review the Design-Builder's Submittals are as follows:
*(List name, address and other information.)*

> Rob Wolter
> Honeywell
> Global Real Estate
> 312-615-6262 (M)
> robert.wolter@honeywell.com

**§ 1.2.3** Intentionally deleted.

**§ 1.2.4** The Design-Builder identifies the following representative in accordance with Section 3.1.2:

> Patrick Elder, Vice President
> Elder Construction, Inc.
> 3431 N Prospect Street
> Colorado Springs, CO 80907

**§ 1.2.5** Neither the Owner's nor the Design-Builder's representative shall be changed without ten days' written notice to the other party.

**§ 1.3 Binding Dispute Resolution**
The method of binding dispute resolution is litigation in a court of competent jurisdiction

**§ 1.4 Definitions**
**§ 1.4.1 Design-Build Documents.** The Design-Build Documents consist of this Agreement between Owner and Design-Builder and its attached Exhibits (hereinafter, the "Agreement"); other documents listed in this Agreement; and Modifications issued after execution of this Agreement. A Modification is (1) a written amendment to the Contract signed by both parties, including the Design-Build Amendment, (2) a Change Order, or (3) a Change Directive.

**§ 1.4.2 The Contract.** The Design-Build Documents form the Contract. The Contract represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Design-Build Documents shall not be construed to create a contractual relationship of any kind between any persons or entities other than the Owner and the Design-Builder.

**§ 1.4.3 The Work.** The term "Work" means the design, construction and related services required to fulfill the Design-Builder's obligations under the Design-Build Documents, whether completed or partially completed, and includes all labor, materials, equipment and services provided or to be provided by the Design-Builder. The Work may constitute the whole or a part of the Project.

**§ 1.4.4 The Project.** The Project is the total design and construction of which the Work performed under the Design-Build Documents may be the whole or a part, and may include design and construction by the Owner and by separate contractors.

**§ 1.4.5 Instruments of Service.** Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Design-Builder, Contractor(s), Architect, and Consultant(s) under their respective agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, digital models and other similar materials.

**§ 1.4.6 Submittal.** A Submittal is any submission to the Owner for review and approval demonstrating how the Design-Builder proposes to conform to the Design-Build Documents for those portions of the Work for which the Design-Build Documents require Submittals. Submittals include, but are not limited to, shop drawings, product data, and samples. Submittals are not Design-Build Documents unless incorporated into a Modification.

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                               (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

**§ 1.4.7 Owner.** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Design-Build Documents as if singular in number. The term "Owner" means the Owner or the Owner's authorized representative.

**§ 1.4.8 Design-Builder.** The Design-Builder is the person or entity identified as such in the Agreement and is referred to throughout the Design-Build Documents as if singular in number. The term "Design-Builder" means the Design-Builder or the Design-Builder's authorized representative.

**§ 1.4.9 Consultant.** A Consultant is a person or entity providing professional services for the Design-Builder for all or a portion of the Work, and is referred to throughout the Design-Build Documents as if singular in number. To the extent required by the relevant jurisdiction, the Consultant shall be lawfully licensed to provide the required professional services.

**§ 1.4.10 Architect.** The Architect is a person or entity providing design services for the Design-Builder for all or a portion of the Work, and is lawfully licensed to practice architecture in the applicable jurisdiction. The Architect is referred to throughout the Design-Build Documents as if singular in number.

**§ 1.4.11 Contractor.** A Contractor is a person or entity performing all or a portion of the construction, required in connection with the Work, for the Design-Builder. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor is referred to throughout the Design-Build Documents as if singular in number and means a Contractor or an authorized representative of the Contractor.

**§ 1.4.12 Confidential Information.** Confidential Information is information containing confidential or business proprietary information that is clearly marked as "confidential."

**§ 1.4.13 Contract Time.** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, as set forth in the Design-Build Amendment for Substantial Completion of the Work.

**§ 1.4.14 Day.** The term "day" as used in the Design-Build Documents shall mean calendar day unless otherwise specifically defined.

**§ 1.4.15 Contract Sum.** The Contract Sum is the amount to be paid to the Design-Builder for performance of the Work after execution of the Design-Build Amendment, as identified in Article A.1 of the Design-Build Amendment.

**§ 1.5** The intent of the Design-Build Documents is to include all items necessary for the proper execution of the Work and completion of the Milestone Events (both as defined below). The Design-Build Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Design-Builder and the Subcontractors must be in accordance with the Design-Build Documents and to the extent inferable from them as being necessary to produce the intended results.

**§ 1.6** Unless expressly agreed otherwise, the Design-Builder shall provide and pay for, or cause to be provided and paid for, and the Work includes, all services, labor, overtime labor, standby labor, methods, materials, equipment, transportation, power, fuel, water, and all other facilities and services, including operating costs of balancing, start-up and checking out equipment, and all other temporary and permanent items and facilities of every kind necessary to complete the Project in the manner and time frame required under the Design-Build Documents.

**§ 1.7** In the event of any conflict or discrepancy between or among different versions of the same Design-Build Document, the most recently issued version takes precedence over previous versions. In the event of any conflict or discrepancy between provisions in separate Design-Build Documents, the more stringent provision shall govern; provided, however, figured dimensions shall prevail over scale dimensions and large scale Drawings shall prevail over small scale Drawings. If the conflict or discrepancy between or among separate Design-Build Documents pertains to (i) quantity, then the Design-Build Document requiring the greater quantity shall be deemed to be more stringent, (ii) quality, then the Design-Build Document requiring the better quality shall be deemed to be more stringent, or (iii) cost, then the Design-Build Document requiring the greater cost shall be deemed to be more stringent. The Design-Builder acknowledged that Drawings can be schematic in nature and do not define exact locations of every part and piece of Work. Items furnished may vary in dimension and in other ways from the specific items called for in the Design-Build Documents. In such cases, exact position of each part is to be

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                                    (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

determined by "on the job" measurements, shop drawings, drawings from equipment manufacturers and coordination with other Work.

**§ 1.8** The Specifications and the Drawings shall be equal in authority and priority; provided, however, that in the event of conflict, (i) the Drawings shall govern as to the quantity and location, and (ii) the Specifications shall govern as to quality and performance. A duplication of Work is not intended by the Design-Build Documents and any duplications specified shall not become a basis for extra cost to the Owner. The appropriate method of performing the Work, in the event of the above-mentioned discrepancies, shall be recommended by the Design Professionals and approved by the Owner.

**§ 1.9** If the Drawings and Specifications do not specify the exact materials, hardware or other items necessary to comply with the requirements of applicable laws governing the accessibility to, or use or occupancy of, the Project by persons with disabilities, including the federal Americans with Disabilities Act or the rules, regulations or guidelines promulgated thereunder or in connection therewith (collectively, the "Disability Access Requirements"), and, instead, state or imply that the Design-Builder is responsible, in such instance, for the selection of the exact materials, hardware or other items necessary to comply with the Disability Access Requirements, then the Design-Builder shall either (a) furnish to the Owner for its approval, as part of the submittals or otherwise, a description of the exact materials, hardware or other items, as the case may be, that the Design-Builder believes is necessary to comply with the Disability Access Requirements, or (b) request that the Architect specify the exact materials, hardware or other items, as the case may be, necessary to comply with the Disability Access Requirements. If the Design-Builder does not exercise either of the options provided in clauses (a) and (b) of the immediately preceding sentence, then the Design-Builder shall be held liable and responsible for any and all damages, costs and expenses incurred by the Owner if said materials, hardware or other items do not comply with the Disability Access Requirements.

**§ 1.10 INFORMATION ONLY DOCUMENTS** All documents that are not Design-Build Documents and which are provided to the Design-Builder by or on behalf of the Owner, the Owner's project manager (the "Project Manager") or the Design Professionals, have been made available to the Design-Builder for information purposes only (collectively, the "Information Only Documents"). The Information Only Documents are not part of the Design-Build Documents, shall be used by the Design-Builder at its own risk, and are provided to the Design-Builder without any representation or warranty by the Owner, any Owner's specialist, any Separate Contractor or the Design Professionals as to the accuracy or completeness of the Information Only Documents or any other matter.

**§ 1.11 OR EQUAL**
Where two or more products are specified for an item of the Work either one thereof is acceptable and the choice is left to the Design-Builder. Where only one product is specified, and where the term "or approved equal" or similar wording is used in connection with specified products, the Design-Builder may, if the Design-Builder so desires, offer for consideration a substitute product which the Design-Builder judges to be equal in every respect to the required product; however, all substitutions are subject to the Owner's prior written consent.

**ARTICLE 2   COMPENSATION AND PROGRESS PAYMENTS**
**§ 2.1 Compensation for Work Performed Prior To Execution of Design-Build Amendment**
**§ 2.1.1** Unless otherwise agreed, payments for Work performed prior to Execution of the Design-Build Amendment shall be made monthly. For the Design-Builder's performance of Work prior to the execution of the Design-Build Amendment, the Owner shall compensate the Design-Builder as follows:  Fifty-Nine Thousand Five Hundred and Dollars and Zero Cents ($59,500.00)

Architectural and Engineering Design Fee $52,000
•     Full Construction Documents
•     2 trips up to Broomfield for programming
•     Shop Drawing & Submittal Review
•     Weekly conference calls during design
•     As-bulits Drawings Allowance $1,500
•     Structural Engineer for new RTU Allowance $1,000
Preconstruction Management $7,500
*(Insert amount of, or basis for, compensation, including compensation for any Sustainability Services, or indicate the exhibit in which the information is provided. If there will be a limit on the total amount of compensation for Work performed prior to the execution of the Design-Build Amendment, state the amount of the limit.)*

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:       (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

**§ 2.1.2** The hourly billing rates for services of the Design-Builder and the Design-Builder's Architect, Consultants and Contractors, if any, are set forth below.

Project Architect - $125/hr.
Construction Executive - $125/hr.
Preconstruction Manager - $95/hr.
Project Manager - $75/hr.
Superintendent - $70/hr.
Project Engineer - $55/hr.
Project Assistant - $45/hr.
Carpenters - $55/hr.
Labors - $35/hr.

### § 2.1.3 Compensation for Reimbursable Expenses Prior To Execution of Design-Build Amendment
**§ 2.1.3.1** Reimbursable Expenses are in addition to compensation set forth in Section 2.1.1 and 2.1.2 and include expenses, directly related to the Project, incurred by the Design-Builder and the Design-Builder's Architect, Consultants, and Contractors, as follows:

    .1     Transportation and authorized out-of-town travel and subsistence;
    .2     Dedicated data and communication services, teleconferences, Project web sites, and extranets;
    .3     Printing, reproductions, plots, standard form documents;
    .4     Postage, handling and delivery;
    .5     Expense of overtime work requiring higher than regular rates, if authorized in advance by the Owner;
    .6     Renderings, physical models, mock-ups, professional photography, and presentation materials requested by the Owner;
    .7     All taxes levied on professional services and on reimbursable expenses; and
    .8     Other Project-related expenditures, if authorized in advance by the Owner.

**§ 2.1.3.2** For Reimbursable Expenses, the compensation shall be the expenses the Design-Builder and the Design-Builder's Architect, Consultants and Contractors incurred.

### § 2.1.4 Payments to the Design-Builder Prior To Execution of Design-Build Amendment
**§ 2.1.4.1** Payments are due and payable upon presentation of the Design-Builder's invoice.

**§ 2.1.4.2** Records of Reimbursable Expenses and services performed on the basis of hourly rates shall be available to the Owner at mutually convenient times for a period of two years following execution of the Design-Build Amendment or termination of this Agreement, whichever occurs first.

### § 2.2 Contract Sum and Payment for Work Performed After Execution of Design-Build Amendment
For the Design-Builder's performance of the Work after execution of the Design-Build Amendment, the Owner shall pay to the Design-Builder the Contract Sum in current funds as agreed in the Design-Build Amendment.

### § 2.3 PROGRESS PAYMENTS
**§ 2.3.1** Based upon Applications for Payment submitted to the Owner's Project Manager by the Design-Builder and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Design-Builder as provided in this Article 3. Each Application for Payment must be set forth on AIA Documents G702 and G703.

**§ 2.3.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month.

**§ 2.3.3** Provided that an accurate and correctly prepared Application for Payment is received by the Owner's Representative not later than the first day of a month (or, if such day is a non-business day, then the first business day thereafter), the Owner shall make payment to the Design-Builder not later than the 90th day thereafter (or, if such day is a non-business day, then the first business day thereafter). If an Application for Payment is received by the Owner's Representative after the application date fixed above, payment shall be made by the Owner not later than 90 days after the Owner's Representative receives the Application for Payment.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                                      (1886074471)

§ 2.3.4 With each Application for Payment, the Design-Builder shall submit certified payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner, the Owner's Project Manager, or Architect to demonstrate that cash disbursements already made by the Design-Builder on account of the Contract Sum equal or exceed (1) progress payments already received by the Design-Builder; less (2) that portion of those payments attributable to the Design-Builder's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

§ 2.3.5 A "schedule of values" is an itemized schedule of values allocating the Contract Sum to the portions of the Work. The Design-Builder must prepare each schedule of values in such form, and must support it by such data to substantiate its accuracy, as the Owner may require. Each Application for Payment shall be based on the most recent schedule of values submitted by the Design-Builder in accordance with the Design-Build Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work, except that the Design-Builder's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Owner's Project Manager and the Architect may require. This schedule of values, unless objected to by the Owner's Project Manager, shall be used as a basis for reviewing the Design-Builder's Applications for Payment.

§ 2.3.6 Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Design-Builder on account of that portion of the Work for which the Design-Builder has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Contract Sum allocated to that portion of the Work in the schedule of values.

§ 2.3.7 Subject to other provisions of the Design-Build Documents, the amount of each progress payment shall be computed as follows:

.1  Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in the Terms and Conditions;

.2  Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3  Add the Design-Builder's Fee, less retainage of ten percent (10%);

.4  Subtract retainage of ten percent (10%) from that portion of the Work that the Design-Builder self-performs;

.5  Subtract the aggregate of previous payments made by the Owner;

.6  Subtract the shortfall, if any, indicated by the Design-Builder in the documentation required by the Design-Build Documents to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

.7  Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as permitted by the Design-Build Documents.

§ 2.3.8 The Owner and the Design-Builder shall agree upon a (1) mutually acceptable procedure for review and approval of payments to Subcontractors and the Design-Builder shall execute subcontracts in accordance with those agreements. Except with the Owner's prior approval, payments to Subcontractors shall be subject to retainage of not less than ten percent (10%).

§ 2.3.9 In taking action on the Design-Builder's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Design-Builder and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with the terms of the Design-Build Documents or other supporting data; that the Architect has made exhaustive or continuous on-site inspections; or that the Architect has made examinations to ascertain how or for what purposes the Design-Builder has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                        (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

§ 2.3.10 RETAINAGE ON BUILDING PERMIT Notwithstanding anything in the Design-Build Documents to the contrary, no retainage will be withheld from the cost of the Project building permit.

**§ 2.3.11 RETAINAGE PAYMENTS TO SUBCONTRACTORS.** The Design-Builder shall pay retainage to Subcontractors within seven (7) days after receiving retainage payment from the Owner. If retainage is not paid within seven (7) days the Design-Builder must notify the Owner of the reason why. Retainage payments may be withheld from a Subcontractor if there is a quality of Work issue, subcontract issue, or other reasons that the Owner determines warrant the holding of retainage. Retainage payments cannot be made to Subcontractors until the Owner has received all manual and warranty information for the Project.

**§ 2.3.12 FINAL PAYMENT**
**§ 2.3.12.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Design-Builder when:

　.1　the Design-Builder has fully performed this Agreement except for the Design-Builder's responsibility to correct Work as required by the Design-Build Documents, and to satisfy other requirements, if any, which extend beyond final payment;

　.2　a final Certificate for Payment has been issued by the Architect;

　.3　the Owner has received a certificate of occupancy, or its equivalent, from the local unit of government having jurisdiction over the Project;

　.4　all punchlist items are complete to the Owner's reasonable satisfaction;

　.5　the Owner has received all operation and maintenance manuals, and all warranties, required by the Design-Build Documents; and

　.6　the Owner has received all as-built and record drawings as required by the Design-Build Documents.

**§ 2.3.12.2** The Owner's auditors will review and report in writing on the Design-Builder's final accounting within 30 days after delivery of the final accounting to the Architect by the Design-Builder. Based upon the Contract Sum as the Owner's auditors report to be substantiated by the Design-Builder's final accounting, and provided the other conditions of this Article 5 have been met, the Architect will, within seven days after receipt of the written report of the Owner's auditors, either issue to the Owner a final Certificate for Payment with a copy to the Design-Builder, or notify the Design-Builder and Owner in writing of the Architect's reasons for withholding a certificate as permitted by the Design-Build Documents. The time periods stated in this section supersede those stated in the Terms and Conditions.

**§ 2.3.12.3** If the Owner's auditors report the Contract Sum as substantiated by the Design-Builder's final accounting to be less than claimed by the Design-Builder, the Design-Builder shall be entitled to request mediation of the disputed amount. A request for mediation shall be made by the Design-Builder within 30 days after the Design-Builder's receipt of a copy of the Architect's final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Design-Builder. Pending a final resolution of the disputed amount, the Owner shall pay the Design-Builder the amount certified in the Architect's final Certificate for Payment.

**§ 2.3.12.4** The Owner's final payment to the Design-Builder shall be made no later than 90 days after the issuance of the Architect's final Certificate for Payment.

**ARTICLE 3   GENERAL REQUIREMENTS OF THE WORK OF THE DESIGN-BUILD CONTRACT**
**§ 3.1 General**
**§ 3.1.1** The Design-Builder shall comply with any applicable licensing requirements in the jurisdiction where the Project is located.

**§ 3.1.2** The Design-Builder shall designate in writing a representative who is authorized to act on the Design-Builder's behalf with respect to the Project.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                      (1886074471)

§ 3.1.3 The Design-Builder shall perform the Work in accordance with the Design-Build Documents. The Design-Builder shall not be relieved of the obligation to perform the Work in accordance with the Design-Build Documents by the activities, tests, inspections or approvals of the Owner.

§ 3.1.3.1 The Design-Builder shall perform the Work in compliance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities. If the Design-Builder performs Work contrary to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities, the Design-Builder shall assume responsibility for such Work and shall bear the costs attributable to correction.

§ 3.1.3.2 Neither the Design-Builder nor any Contractor, Consultant, or Architect shall be obligated to perform any act which they believe will violate any applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities. If the Design-Builder determines that implementation of any instruction received from the Owner, including those in the Owner's Criteria, would cause a violation of any applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Design-Builder shall notify the Owner in writing. Upon verification by the Owner that a change to the Owner's Criteria is required to remedy the violation, the Owner and the Design-Builder shall execute a Modification in accordance with Article 6.

§ 3.1.4 The Design-Builder shall be responsible to the Owner for acts and omissions of the Design-Builder's employees, Architect, Consultants, Contractors, and their agents and employees, and other persons or entities performing portions of the Work.

§ 3.1.5 **General Consultation.** The Design-Builder shall schedule and conduct periodic meetings with the Owner to review matters such as procedures, progress, coordination, and scheduling of the Work.

§ 3.1.6 When applicable law requires that services be performed by licensed professionals, the Design-Builder shall provide those services through qualified, licensed professionals. The Owner understands and agrees that the services of the Design-Builder's Architect and the Design-Builder's other Consultants are performed in the sole interest of, and for the exclusive benefit of, the Design-Builder.

§ 3.1.7 The Design-Builder, with the assistance of the Owner, shall prepare and file documents required to obtain necessary approvals of governmental authorities having jurisdiction over the Project.

§ 3.1.8 **Progress Reports**
§ 3.1.8.1 The Design-Builder shall keep the Owner informed of the progress and quality of the Work. On a monthly basis, or otherwise as agreed to by the Owner and Design-Builder, the Design-Builder shall submit written progress reports to the Owner, showing estimated percentages of completion and other information identified below:

.1 Work completed for the period;
.2 Project schedule status;
.3 Submittal schedule and status report, including a summary of outstanding Submittals;
.4 Responses to requests for information to be provided by the Owner;
.5 Approved Change Orders and Change Directives;
.6 Pending Change Order and Change Directive status reports;
.7 Tests and inspection reports;
.8 Status report of Work rejected by the Owner;
.9 Status of Claims previously submitted in accordance with Article 14;
.10 Cumulative total of the Cost of the Work to date including the Design-Builder's compensation and Reimbursable Expenses, if any;
.11 Current Project cash-flow and forecast reports; and
.12 Additional information as agreed to by the Owner and Design-Builder.

§ 3.1.8.2 In addition, where the Contract Sum is the Cost of the Work with or without a Guaranteed Maximum Price, the Design-Builder shall include the following additional information in its progress reports:

.1 Design-Builder's work force report;
.2 Equipment utilization report; and
.3 Cost summary, comparing actual costs to updated cost estimates.

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                            (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

### § 3.1.9 Design-Builder's Schedules

§ 3.1.9.1 The Design-Builder, promptly after execution of this Agreement, shall prepare and submit for the Owner's information a schedule for the Work. The schedule, including the time required for design and construction, shall not exceed time limits current under the Design-Build Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Design-Build Documents, shall provide for expeditious and practicable execution of the Work, and shall include allowances for periods of time required for the Owner's review and for approval of submissions by authorities having jurisdiction over the Project.

§ 3.1.9.2 The Design-Builder shall perform the Work in general accordance with the most recent schedules submitted to the Owner.

§ 3.1.10 **Certifications.** Upon the Owner's written request, the Design-Builder shall obtain from the Architect, Consultants, and Contractors, and furnish to the Owner, certifications with respect to the documents and services provided by the Architect, Consultants, and Contractors (a) that, to the best of their knowledge, information and belief, the documents or services to which the certifications relate (i) are consistent with the Design-Build Documents, except to the extent specifically identified in the certificate, and (ii) comply with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities governing the design of the Project; and (b) that the Owner and its consultants shall be entitled to rely upon the accuracy of the representations and statements contained in the certifications. The Design-Builder's Architect, Consultants, and Contractors shall not be required to execute certificates or consents that would require knowledge, services or responsibilities beyond the scope of their services.

### § 3.1.11 Design-Builder's Submittals

§ 3.1.11.1 Prior to submission of any Submittals, the Design-Builder shall prepare a Submittal schedule, and shall submit the schedule for the Owner's approval. The Owner's approval shall not unreasonably be delayed or withheld. The Submittal schedule shall (1) be coordinated with the Design-Builder's schedule provided in Section 3.1.9.1, (2) allow the Owner reasonable time to review Submittals, and (3) be periodically updated to reflect the progress of the Work. If the Design-Builder fails to submit a Submittal schedule, the Design-Builder shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of Submittals.

§ 3.1.11.2 By providing Submittals the Design-Builder represents to the Owner that it has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so and (3) checked and coordinated the information contained within such Submittals with the requirements of the Work and of the Design-Build Documents.

§ 3.1.11.3 The Design-Builder shall perform no portion of the Work for which the Design-Build Documents require Submittals until the Owner has approved the respective Submittal.

§ 3.1.11.4 The Work shall be in accordance with approved Submittals except that the Design-Builder shall not be relieved of its responsibility to perform the Work consistent with the requirements of the Design-Build Documents. The Work may deviate from the Design-Build Documents only if the Design-Builder has notified the Owner in writing of a deviation from the Design-Build Documents at the time of the Submittal and a Modification is executed authorizing the identified deviation. The Design-Builder shall not be relieved of responsibility for errors or omissions in Submittals by the Owner's approval of the Submittals.

§ 3.1.11.5 All professional design services or certifications to be provided by the Design-Builder, including all drawings, calculations, specifications, certifications, shop drawings and other Submittals, shall contain the signature and seal of the licensed design professional preparing them. Submittals related to the Work designed or certified by the licensed design professionals, if prepared by others, shall bear the licensed design professional's written approval. The Owner and its consultants shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals.

§ 3.1.12 **Warranty.** The Design-Builder warrants to the Owner that materials and equipment furnished under the Contract will be of good quality and new unless the Design-Build Documents require or permit otherwise. The Design-Builder further warrants that the Work will conform to the requirements of the Design-Build Documents and will be free from defects, except for those inherent in the quality of the Work or otherwise expressly permitted by the Design-Build Documents. Work, materials, or equipment not conforming to these requirements may be

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                                      (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

considered defective. The Design-Builder's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Design-Builder, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Owner, the Design-Builder shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

### § 3.1.13 Royalties, Patents and Copyrights
**§ 3.1.13.1** The Design-Builder shall pay all royalties and license fees.

**§ 3.1.13.2** The Design-Builder shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and its separate contractors and consultants harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Owner, or where the copyright violations are required in the Owner's Criteria. However, if the Design-Builder has reason to believe that the design, process or product required in the Owner's Criteria is an infringement of a copyright or a patent, the Design-Builder shall be responsible for such loss unless such information is promptly furnished to the Owner. If the Owner receives notice from a patent or copyright owner of an alleged violation of a patent or copyright, attributable to the Design-Builder, the Owner shall give prompt written notice to the Design-Builder.

### § 3.1.14 Indemnification
**§ 3.1.14.1** To the fullest extent permitted by law the Design-Builder shall indemnify and hold harmless the Owner, the Owner's Project Manager, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Design-Builder, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 3.14.

**§ 3.1.14.2** In claims against any person or entity indemnified under this Section 3.14 by an employee of the Design-Builder, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.14 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Design-Builder or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

**§ 3.1.14.3** To the fullest extent permitted by law and without limiting any other indemnification obligations of the Design-Builder, except only to the extent caused by the uncured failure of the Owner to make payment when required by the Design-Build Documents, the Design-Builder shall indemnify and defend the Owner, its officers, directors, assigns, lenders, agents and employees from any payment claims, liens, charges, or encumbrances (including but not limited to mechanic's and materialmen's liens or bond claims) arising out of or in connection with the performance of the Work. Upon request of the Owner, the Design-Builder shall, within 10 days, remove any and all liens filed against the Owner or its property unless such liens are caused by the uncured failure of the Owner to make payment when required by the Design-Build Documents. If the Design-Builder fails to do so, the Owner is authorized by the Design-Builder to remove or satisfy any such liens, and the Design-Builder shall pay to the Owner all costs and damages incurred by the Owner to do so, including attorneys' fees. The Design-Builder is not required to insure over the indemnity obligations imposed in this Subparagraph 3.14.3.

**§ 3.1.14.4** The Design-Builder shall indemnify and hold harmless the Owner and its affiliates, officers, directors, and employees from and against all claims, liabilities, damages, losses, costs, expenses (including reasonable attorney's fees and expenses, and fees and expenses of experts) for bodily injury, including death, or damage to or loss of property, or any other type or form of loss occurring or sustained or resulting from:

     (a)       Any violation by the Design-Builder, its Subcontractors, representatives, employees, and agents of any municipal, state or federal laws, rules, or regulations applicable to the performance of its obligations under the Contract;

     (b)       Environmental violations or contamination from hazardous substances, hazardous wastes and

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2600918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                          (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

emissions or other substances or chemicals regulated by any applicable environmental laws or regulations and resulting from any willful misconduct, negligent act or omission, or legal violation by the Design-Builder, its Subcontractors, Suppliers, representatives, employees, or agents; and

(c)     The failure of any of the Design-Builder's employees, agents, representatives, Suppliers, or Subcontractors to obtain and maintain the required skills, licenses, certificates and permits mandated by applicable federal, state or local governing authorities with jurisdiction over construction, fabrication, environmental, health and safety matters or the Project.

## § 3.1.15 Contingent Assignment of Agreements

§ 3.1.15.1 Each agreement for a portion of the Work is assigned by the Design-Builder to the Owner, provided that

.1     assignment is effective only after termination of the Contract by the Owner for cause, pursuant to Sections 13.1.4 or 13.2.2, and only for those agreements that the Owner accepts by written notification to the Design-Builder and the Architect, Consultants, and Contractors whose agreements are accepted for assignment; and

.2     assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

When the Owner accepts the assignment of an agreement, the Owner assumes the Design-Builder's rights and obligations under the agreement.

§ 3.1.15.2 Upon such assignment, if the Work has been suspended for more than 30 days, the compensation under the assigned agreement shall be equitably adjusted for increases in cost resulting from the suspension.

§ 3.1.15.3 Upon such assignment to the Owner under this Section 3.1.15, the Owner may further assign the agreement to a successor design-builder or other entity. If the Owner assigns the agreement to a successor design-builder or other entity, the Owner shall nevertheless remain legally responsible for all of the successor design-builder's or other entity's obligations under the agreement.

§ 3.1.16 Design-Builder's Insurance and Bonds. The Design-Builder shall purchase and maintain insurance and provide bonds as set forth in **Exhibit B**.

## ARTICLE 4   WORK PRIOR TO EXECUTION OF THE DESIGN-BUILD AMENDMENT

### § 4.1 General

§ 4.1.1 Any information submitted by the Design-Builder, and any interim decisions made by the Owner, shall be for the purpose of facilitating the design process and shall not modify the Owner's Criteria unless the Owner and Design-Builder execute a Modification.

§ 4.1.2 The Design-Builder shall advise the Owner on proposed site use and improvements, selection of materials, and building systems and equipment. The Design-Builder shall also provide the Owner with recommendations, consistent with the Owner's Criteria, on constructability; availability of materials and labor; time requirements for procurement, installation and construction; and factors related to construction cost including, but not limited to, costs of alternative designs or materials, preliminary budgets, life-cycle data, and possible cost reductions.

### § 4.2 Evaluation of the Owner's Criteria

§ 4.2.1 The Design-Builder shall schedule and conduct meetings with the Owner and any other necessary individuals or entities to discuss and review the Owner's Criteria as set forth in Section 1.1. The Design-Builder shall thereafter again meet with the Owner to discuss a preliminary evaluation of the Owner's Criteria. The preliminary evaluation shall address possible alternative approaches to design and construction of the Project and include the Design-Builder's recommendations, if any, with regard to accelerated or fast-track scheduling, procurement, or phased construction. The preliminary evaluation shall consider cost information, constructability, and procurement and construction scheduling issues.

§ 4.2.2 After the Design-Builder meets with the Owner and presents the preliminary evaluation, the Design-Builder shall provide a written report to the Owner, summarizing the Design-Builder's evaluation of the Owner's Criteria. The report shall also include

.1     allocations of program functions, detailing each function and their square foot areas;

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                         (1886074471)

    .2    a preliminary estimate of the Cost of the Work, and, if necessary, recommendations to adjust the Owner's Criteria to conform to the Owner's budget;

    .3    a preliminary schedule, which shall include proposed design milestones; dates for receiving additional information from, or for work to be completed by, the Owner; anticipated date for the Design-Builder's Proposal; and dates of periodic design review sessions with the Owner.

**§ 4.2.3** The Owner shall review the Design-Builder's written report and, if acceptable, provide the Design-Builder with written consent to proceed to the development of the Preliminary Design as described in Section 4.3. The consent to proceed shall not be understood to modify the Owner's Criteria unless the Owner and Design-Builder execute a Modification.

## § 4.3 Preliminary Design
**§ 4.3.1** Upon the Owner's issuance of a written consent to proceed under Section 4.2.3, the Design-Builder shall prepare and submit a Preliminary Design to the Owner. The Preliminary Design shall include a report identifying any deviations from the Owner's Criteria, and shall include the following:

    .1    Confirmation of the allocations of program functions;
    .2    Site plan;
    .3    Building plans, sections and elevations;
    .4    Structural system;
    .5    Selections of major building systems, including but not limited to mechanical, electrical and plumbing systems; and
    .6    Outline specifications or sufficient drawing notes describing construction materials.

The Preliminary Design may include some combination of physical study models, perspective sketches, or digital modeling.

**§ 4.3.2** The Owner shall review the Preliminary Design and, if acceptable, provide the Design-Builder with written consent to proceed to development of the Design-Builder's Proposal. The Preliminary Design shall not modify the Owner's Criteria unless the Owner and Design-Builder execute a Modification.

## § 4.4 Design-Builder's Proposal
**§ 4.4.1** Upon the Owner's issuance of a written consent to proceed under Section 4.3.2, the Design-Builder shall prepare and submit the Design-Builder's Proposal to the Owner. The Design-Builder's Proposal shall include the following:

    .1    A list of the Preliminary Design documents and other information, including the Design-Builder's clarifications, assumptions and deviations from the Owner's Criteria, upon which the Design-Builder's Proposal is based;
    .2    The proposed Contract Sum, including the compensation method and, if based upon the Cost of the Work plus a fee, a written statement of estimated cost organized by trade categories, allowances, contingencies, Design-Builder's Fee, and other items that comprise the Contract Sum;
    .3    The proposed date the Design-Builder shall achieve Substantial Completion;
    .4    An enumeration of any qualifications and exclusions, if applicable;
    .5    A list of the Design-Builder's key personnel, Contractors and suppliers; and
    .6    The date on which the Design-Builder's Proposal expires.

**§ 4.4.2** Submission of the Design-Builder's Proposal shall constitute a representation by the Design-Builder that it has visited the site and become familiar with local conditions under which the Work is to be completed.

**§ 4.4.3** If the Owner and Design-Builder agree on a proposal, the Owner and Design-Builder shall execute the Design-Build Amendment setting forth the terms of their agreement.

## ARTICLE 5   WORK FOLLOWING EXECUTION OF THE DESIGN-BUILD AMENDMENT
## § 5.1 Construction Documents
**§ 5.1.1** Upon the execution of the Design-Build Amendment, the Design-Builder shall prepare Construction Documents. The Construction Documents shall establish the quality levels of materials and systems required. The Construction Documents shall be consistent with the Design-Build Documents.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:           (1886074471)

**§ 5.1.2** The Design-Builder shall provide the Construction Documents to the Owner for the Owner's information. If the Owner discovers any deviations between the Construction Documents and the Design-Build Documents, the Owner shall promptly notify the Design-Builder of such deviations in writing. The Construction Documents shall not modify the Design-Build Documents unless the Owner and Design-Builder execute a Modification. The failure of the Owner to discover any such deviations shall not relieve the Design-Builder of the obligation to perform the Work in accordance with the Design-Build Documents.

### § 5.2 Construction
**§ 5.2.1 Commencement.** Except as permitted in Section 5.2.2, construction shall not commence prior to execution of the Design-Build Amendment.

**§ 5.2.2** If the Owner and Design-Builder agree in writing, construction may proceed prior to the execution of the Design-Build Amendment. However, such authorization shall not waive the Owner's right to reject the Design-Builder's Proposal.

**§ 5.2.3** The Design-Builder shall supervise and direct the Work, using the Design-Builder's best skill and attention. The Design-Builder shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures, and for coordinating all portions of the Work under the Contract, unless the Design-Build Documents give other specific instructions concerning these matters.

**§ 5.2.4** The Design-Builder shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

### § 5.3 Labor and Materials
**§ 5.3.1** Unless otherwise provided in the Design-Build Documents, the Design-Builder shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services, necessary for proper execution and completion of the Work, whether temporary or permanent, and whether or not incorporated or to be incorporated in the Work.

**§ 5.3.2** When a material or system is specified in the Design-Build Documents, the Design-Builder may make substitutions only in accordance with Article 6.

**§ 5.3.3** The Design-Builder shall enforce strict discipline and good order among the Design-Builder's employees and other persons carrying out the Work. The Design-Builder shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

### § 5.4 Taxes
The Design-Builder shall pay sales, consumer, use and similar taxes, for the Work provided by the Design-Builder, that are legally enacted when the Design-Build Amendment is executed, whether or not yet effective or merely scheduled to go into effect.

### § 5.5 Permits, Fees, Notices and Compliance with Laws
**§ 5.5.1** Unless otherwise provided in the Design-Build Documents, the Design-Builder shall secure and pay for the building permit as well as any other permits, fees, licenses, and inspections by government agencies, necessary for proper execution of the Work and Substantial Completion of the Project.

**§ 5.5.2** The Design-Builder shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities, applicable to performance of the Work.

**§ 5.5.3 Concealed or Unknown Conditions.** If the Design-Builder encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Design-Build Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Design-Build Documents, the Design-Builder shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Design-Builder's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA®
Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document,
or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the
law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not
for resale.
**User Notes:**                                                                                       (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

determines that the conditions at the site are not materially different from those indicated in the Design-Build Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Design-Builder in writing, stating the reasons. If, in the course of the Work, the Design-Builder encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Design-Build Documents, the Design-Builder shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Design-Builder shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in the Design-Build Documents. If the Design-Builder performs Work knowing (or reasonably should have known) it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Owner, the Design-Builder shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

### § 5.6 Allowances
**§ 5.6.1** The Design-Builder shall include in the Contract Sum all allowances stated in the Design-Build Documents. Items covered by allowances shall be supplied for such amounts, and by such persons or entities as the Owner may direct, but the Design-Builder shall not be required to employ persons or entities to whom the Design-Builder has reasonable objection.

**§ 5.6.2** Unless otherwise provided in the Design-Build Documents,
- .1 allowances shall cover the cost to the Design-Builder of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;
- .2 the Design-Builder's costs for unloading and handling at the site, labor, installation costs, overhead, profit, and other expenses contemplated for stated allowance amounts, shall be included in the Contract Sum but not in the allowances; and
- .3 whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 5.6.2.1 and (2) changes in Design-Builder's costs under Section 5.6.2.2.

**§ 5.6.3** The Owner shall make selections of materials and equipment with reasonable promptness for allowances requiring Owner selection.

### § 5.7 Key Personnel, Contractors and Suppliers
**§ 5.7.1** The Design-Builder shall not employ personnel, or contract with Contractors or suppliers to whom the Owner has made reasonable and timely objection. The Design-Builder shall not be required to contract with anyone to whom the Design-Builder has made reasonable and timely objection.

**§ 5.7.2** If the Design-Builder changes any of the personnel, Contractors or suppliers identified in the Design-Build Amendment, the Design-Builder shall notify the Owner and provide the name and qualifications of the new personnel, Contractor or supplier. The Owner may reply within 14 days to the Design-Builder in writing, stating (1) whether the Owner has reasonable objection to the proposed personnel, Contractor or supplier or (2) that the Owner requires additional time to review. Failure of the Owner to reply within the 14-day period shall constitute notice of no reasonable objection.

**§ 5.7.3** Except for those persons or entities already identified or required in the Design-Build Amendment, the Design-Builder, as soon as practicable after execution of the Design-Build Amendment, shall furnish in writing to the Owner the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Owner may reply within 14 days to the Design-Builder in writing stating (1) whether the Owner has reasonable objection to any such proposed person or entity or (2) that the Owner requires additional time for review. Failure of the Owner to reply within the 14-day period shall constitute notice of no reasonable objection.

**§ 5.7.3.1** If the Owner has reasonable objection to a person or entity proposed by the Design-Builder, the Design-Builder shall propose another to whom the Owner has no reasonable objection. If the rejected person or entity was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes: (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

commencement of the substitute person or entity's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Design-Builder has acted promptly and responsively in submitting names as required.

### § 5.8 Documents and Submittals at the Site
The Design-Builder shall maintain at the site for the Owner one copy of the Design-Build Documents and a current set of the Construction Documents, in good order and marked currently to indicate field changes and selections made during construction, and one copy of approved Submittals. The Design-Builder shall deliver these items to the Owner in accordance with Section 9.10.2 as a record of the Work as constructed.

### § 5.9 Use of Site
The Design-Builder shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, lawful orders of public authorities, and the Design-Build Documents, and shall not unreasonably encumber the site with materials or equipment.

### § 5.10 Cutting and Patching
The Design-Builder shall not cut, patch or otherwise alter fully or partially completed construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Design-Builder shall not unreasonably withhold from the Owner or a separate contractor the Design-Builder's consent to cutting or otherwise altering the Work.

### § 5.11 Cleaning Up
**§ 5.11.1** The Design-Builder shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Design-Builder shall remove waste materials, rubbish, the Design-Builder's tools, construction equipment, machinery and surplus materials from and about the Project.

**§ 5.11.2** If the Design-Builder fails to clean up as provided in the Design-Build Documents, the Owner may do so and Owner shall be entitled to reimbursement from the Design-Builder.

### § 5.12 Access to Work
The Design-Builder shall provide the Owner and its separate contractors and consultants access to the Work in preparation and progress wherever located. The Design-Builder shall notify the Owner regarding Project safety criteria and programs, which the Owner, and its contractors and consultants, shall comply with while at the site.

### § 5.13 Construction by Owner or by Separate Contractors
### § 5.13.1 Owner's Right to Perform Construction and to Award Separate Contracts
**§ 5.13.1.1** The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces; and to award separate contracts in connection with other portions of the Project, or other construction or operations on the site, under terms and conditions identical or substantially similar to this Contract, including those terms and conditions related to insurance and waiver of subrogation. The Owner shall notify the Design-Builder promptly after execution of any separate contract. If the Design-Builder claims that delay or additional cost is involved because of such action by the Owner, the Design-Builder shall make a Claim as provided in Article 14.

**§ 5.13.1.2** When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Design-Builder" in the Design-Build Documents in each case shall mean the individual or entity that executes each separate agreement with the Owner.

**§ 5.13.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces, and of each separate contractor, with the Work of the Design-Builder, who shall cooperate with them. The Design-Builder shall participate with other separate contractors and the Owner in reviewing their construction schedules. The Design-Builder shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Design-Builder, separate contractors and the Owner until subsequently revised.

**§ 5.13.1.4** Unless otherwise provided in the Design-Build Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces or separate contractors, the Owner shall be deemed to be subject to the same obligations, and to have the same rights, that apply to the Design-Builder under the Contract.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                                  (1886074471)

**17**

§ 5.14 Mutual Responsibility

**§ 5.14.1** The Design-Builder shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Design-Builder's construction and operations with theirs as required by the Design-Build Documents.

**§ 5.14.2** If part of the Design-Builder's Work depends upon construction or operations by the Owner or a separate contractor, the Design-Builder shall, prior to proceeding with that portion of the Work, prepare a written report to the Owner, identifying apparent discrepancies or defects in the construction or operations by the Owner or separate contractor that would render it unsuitable for proper execution and results of the Design-Builder's Work. Failure of the Design-Builder to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Design-Builder's Work, except as to defects not then reasonably discoverable.

**§ 5.14.3** The Design-Builder shall reimburse the Owner for costs the Owner incurs that are payable to a separate contractor because of the Design-Builder's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Design-Builder for costs the Design-Builder incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

**§ 5.14.4** The Design-Builder shall promptly remedy damage the Design-Builder wrongfully causes to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

**§ 5.14.5** The Owner and each separate contractor shall have the same responsibilities for cutting and patching the Work as the Design-Builder has with respect to the construction of the Owner or separate contractors in Section 5.10.

## § 5.15 Owner's Right to Clean Up
If a dispute arises among the Design-Builder, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and will allocate the cost among those responsible.

## ARTICLE 6   CHANGES IN THE WORK
### § 6.1 General
**§ 6.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order or Change Directive, subject to the limitations stated in this Article 6 and elsewhere in the Design-Build Documents.

**§ 6.1.2** A Change Order shall be based upon agreement between the Owner and Design-Builder. The Owner may issue a Change Directive without agreement by the Design-Builder.

**§ 6.1.3** Changes in the Work shall be performed under applicable provisions of the Design-Build Documents, and the Design-Builder shall proceed promptly, unless otherwise provided in the Change Order or Change Directive.

## § 6.2 Change Orders
A Change Order is a written instrument signed by the Owner and Design-Builder stating their agreement upon all of the following:
  .1  The change in the Work;
  .2  The amount of the adjustment, if any, in the Contract Sum or, if prior to execution of the Design-Build Amendment, the adjustment in the Design-Builder's compensation; and
  .3  The extent of the adjustment, if any, in the Contract Time.

## § 6.3 Change Directives
**§ 6.3.1** A Change Directive is a written order signed by the Owner directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or, if prior to execution of the Design-Build Amendment, the adjustment in the Design-Builder's compensation, or Contract Time. The Owner may by Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum or, if prior to execution of the Design-Build Amendment, the adjustment in the Design-Builder's compensation, and Contract Time being adjusted accordingly.

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                     (1886074471)

§ 6.3.2 A Change Directive shall be used in the absence of total agreement on the terms of a Change Order

**§ 6.3.3** If the Change Directive provides for an adjustment to the Contract Sum or, if prior to execution of the Design-Build Amendment, an adjustment in the Design-Builder's compensation, the adjustment shall be based on one of the following methods:

    .1    Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

    .2    Unit prices stated in the Design-Build Documents or subsequently agreed upon;

    .3    Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

    .4    As provided in Section 6.3.7.

**§ 6.3.4** If unit prices are stated in the Design-Build Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Design-Builder, the applicable unit prices shall be equitably adjusted.

**§ 6.3.5** Upon receipt of a Change Directive, the Design-Builder shall promptly proceed with the change in the Work involved and advise the Owner of the Design-Builder's agreement or disagreement with the method, if any, provided in the Change Directive for determining the proposed adjustment in the Contract Sum or, if prior to execution of the Design-Build Amendment, the adjustment in the Design-Builder's compensation, or Contract Time.

**§ 6.3.6** A Change Directive signed by the Design-Builder indicates the Design-Builder's agreement therewith, including adjustment in Contract Sum or, if prior to execution of the Design-Build Amendment, the adjustment in the Design-Builder's compensation, and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 6.3.7** If the Design-Builder does not respond promptly or disagrees with the method for adjustment in the Contract Sum or, if prior to execution of the Design-Build Amendment, the method for adjustment in the Design-Builder's compensation, the Owner shall determine the method and the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase, an amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 6.3.3.3, the Design-Builder shall keep and present, in such form as the Owner may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Design-Build Documents, costs for the purposes of this Section 6.3.7 shall be limited to the following:

    .1    Additional costs of professional services;

    .2    Costs of labor, including social security, unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

    .3    Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

    .4    Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Design-Builder or others;

    .5    Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

    .6    Additional costs of supervision and field office personnel directly attributable to the change.

**§ 6.3.8** The amount of credit to be allowed by the Design-Builder to the Owner for a deletion or change that results in a net decrease in the Contract Sum or, if prior to execution of the Design-Build Amendment, in the Design-Builder's compensation, shall be actual net cost. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 6.3.9** Pending final determination of the total cost of a Change Directive to the Owner, the Design-Builder may request payment for Work completed under the Change Directive in Applications for Payment. The Owner will make an interim determination for purposes of certification for payment for those costs deemed to be reasonably justified. The Owner's interim determination of cost shall adjust the Contract Sum or, if prior to execution of the

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**
(1886074471)

Design-Build Amendment, the Design-Builder's compensation, on the same basis as a Change Order, subject to the right of Design-Builder to disagree and assert a Claim in accordance with Article 14.

**§ 6.3.10** When the Owner and Design-Builder agree with a determination concerning the adjustments in the Contract Sum or, if prior to execution of the Design-Build Amendment, the adjustment in the Design-Builder's compensation and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Owner and Design-Builder shall execute a Change Order. Change Orders may be issued for all or any part of a Change Directive.

## ARTICLE 7  OWNER'S RESPONSIBILITIES
### § 7.1 General
**§ 7.1.1** The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all Project matters requiring the Owner's approval or authorization.

**§ 7.1.2** The Owner shall render decisions in a timely manner and in accordance with the Design-Builder's schedule agreed to by the Owner. The Owner shall furnish to the Design-Builder, within 15 days after receipt of a written request, information necessary and relevant for the Design-Builder to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

### § 7.2 Information and Services Required of the Owner
**§ 7.2.1** The Owner shall furnish information or services required of the Owner by the Design-Build Documents with reasonable promptness.

**§ 7.2.2** The Owner shall provide, to the extent under the Owner's control and if not required by the Design-Build Documents to be provided by the Design-Builder, the results and reports of prior tests, inspections or investigations conducted for the Project involving structural or mechanical systems; chemical, air and water pollution; hazardous materials; or environmental and subsurface conditions and information regarding the presence of pollutants at the Project site. Upon receipt of a written request from the Design-Builder, the Owner shall also provide surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site under the Owner's control.

**§ 7.2.3** The Owner shall promptly obtain easements, zoning variances, and legal authorizations or entitlements regarding site utilization where essential to the execution of the Project.

**§ 7.2.4** The Owner shall cooperate with the Design-Builder in securing building and other permits, licenses and inspections.

**§ 7.2.5** The services, information, surveys and reports required to be provided by the Owner under this Agreement, shall be furnished at the Owner's expense, and except as otherwise specifically provided in this Agreement or elsewhere in the Design-Build Documents or to the extent the Owner advises the Design-Builder to the contrary in writing, the Design-Builder shall be entitled to rely upon the accuracy and completeness thereof. In no event shall the Design-Builder be relieved of its responsibility to exercise proper precautions relating to the safe performance of the Work.

**§ 7.2.6** If the Owner observes or otherwise becomes aware of a fault or defect in the Work or non-conformity with the Design-Build Documents, the Owner shall give prompt written notice thereof to the Design-Builder.

**§ 7.2.7** Prior to the execution of the Design-Build Amendment, the Design-Builder may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Design-Build Documents and the Design-Builder's Proposal. Thereafter, the Design-Builder may only request such evidence if (1) the Owner fails to make payments to the Design-Builder as the Design-Build Documents require; (2) a change in the Work materially changes the Contract Sum; or (3) the Design-Builder identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or the portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner shall not materially vary such financial arrangements without prior notice to the Design-Builder.

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

§ 7.2.8 Except as otherwise provided in the Design-Build Documents or when direct communications have been specially authorized, the Owner shall communicate through the Design-Builder with persons or entities employed or retained by the Design-Builder.

§ 7.2.9 Unless required by the Design-Build Documents to be provided by the Design-Builder, the Owner shall, upon request from the Design-Builder, furnish the services of geotechnical engineers or other consultants for investigation of subsurface, air and water conditions when such services are reasonably necessary to properly carry out the design services furnished by the Design-Builder. In such event, the Design-Builder shall specify the services required. Such services may include, but are not limited to, test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion and resistivity tests, and necessary operations for anticipating subsoil conditions. The services of geotechnical engineer(s) or other consultants shall include preparation and submission of all appropriate reports and professional recommendations.

### § 7.3 Submittals
§ 7.3.1 The Owner shall review and approve or take other appropriate action on Submittals. Review of Submittals is not conducted for the purpose of determining the accuracy and completeness of other details, such as dimensions and quantities; or for substantiating instructions for installation or performance of equipment or systems; or for determining that the Submittals are in conformance with the Design-Build Documents, all of which remain the responsibility of the Design-Builder as required by the Design-Build Documents. The Owner's action will be taken in accordance with the submittal schedule approved by the Owner or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Owner's judgment to permit adequate review. The Owner's review of Submittals shall not relieve the Design-Builder of the obligations under Sections 3.1.11, 3.1.12, and 5.2.3. The Owner's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Owner, of any construction means, methods, techniques, sequences or procedures. The Owner's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 7.3.2 Upon review of the Submittals required by the Design-Build Documents, the Owner shall notify the Design-Builder of any non-conformance with the Design-Build Documents the Owner discovers.

§ 7.4 Visits to the site by the Owner shall not be construed to create an obligation on the part of the Owner to make on-site inspections to check the quality or quantity of the Work. The Owner shall neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, because these are solely the Design-Builder's rights and responsibilities under the Design-Build Documents.

§ 7.5 The Owner shall not be responsible for the Design-Builder's failure to perform the Work in accordance with the requirements of the Design-Build Documents. The Owner shall not have control over or charge of, and will not be responsible for acts or omissions of the Design-Builder, Architect, Consultants, Contractors, or their agents or employees, or any other persons or entities performing portions of the Work for the Design-Builder.

§ 7.6 The Owner has the authority to reject Work that does not conform to the Design-Build Documents. The Owner shall have authority to require inspection or testing of the Work in accordance with Section 15.5.2, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Owner nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Owner to the Design-Builder, the Architect, Consultants, Contractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

§ 7.7 The Owner shall determine the date or dates of Substantial Completion in accordance with Section 9.8 and the date of final completion in accordance with Section 9.10.

### § 7.8 Owner's Right to Stop Work
If the Design-Builder fails to correct Work which is not in accordance with the requirements of the Design-Build Documents as required by Section 11.2 or persistently fails to carry out Work in accordance with the Design-Build Documents, the Owner may issue a written order to the Design-Builder to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Design-Builder or any other person or entity, except to the extent required by Section 5.13.1.3.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                     (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

### § 7.9 Owner's Right to Carry Out the Work

If the Design-Builder defaults or neglects to carry out the Work in accordance with the Design-Build Documents and fails within a ten-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case, an appropriate Change Order shall be issued deducting from payments then or thereafter due the Design-Builder the reasonable cost of correcting such deficiencies. If payments then or thereafter due the Design-Builder are not sufficient to cover such amounts, the Design-Builder shall pay the difference to the Owner.

## ARTICLE 8   TIME
### § 8.1 Progress and Completion
**§ 8.1.1** Time limits stated in the Design-Build Documents are of the essence of the Contract. By executing the Design-Build Amendment the Design-Builder confirms that the Contract Time is a reasonable period for performing the Work.

**§ 8.1.2** The Design-Builder shall not, except by agreement of the Owner in writing, commence the Work prior to the effective date of insurance, other than property insurance, required by this Contract. The Contract Time shall not be adjusted as a result of the Design-Builder's failure to obtain insurance required under this Contract.

**§ 8.1.3** The Design-Builder shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

### § 8.2 Delays and Extensions of Time
**§ 8.2.1** If the Design-Builder is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or of a consultant or separate contractor employed by the Owner; or by changes ordered in the Work by the Owner; or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Design-Builder's control; or by delay authorized by the Owner pending mediation and binding dispute resolution or by other causes that the Owner determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Owner may determine.

**§ 8.2.3** This Section 8.2 does not preclude recovery of damages for delay by either party under other provisions of the Design-Build Documents.

## ARTICLE 9   PAYMENT APPLICATIONS AND PROJECT COMPLETION
### § 9.1 Contract Sum
The Contract Sum is stated in the Design-Build Amendment.

### § 9.2 Schedule of Values
Where the Contract Sum is based on a stipulated sum or Guaranteed Maximum Price, the Design-Builder, prior to the first Application for Payment after execution of the Design-Build Amendment shall submit to the Owner a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Owner may require. This schedule, unless objected to by the Owner, shall be used as a basis for reviewing the Design-Builder's Applications for Payment.

### § 9.3 Applications for Payment
**§ 9.3.1** At least ten days before the date established for each progress payment, the Design-Builder shall submit to the Owner an itemized Application for Payment for completed portions of the Work. The application shall be notarized, if required, and supported by data substantiating the Design-Builder's right to payment as the Owner may require, such as copies of requisitions from the Architect, Consultants, Contractors, and material suppliers, and shall reflect retainage if provided for in the Design-Build Documents.

**§ 9.3.1.1** As provided in Section 6.3.9, Applications for Payment may include requests for payment on account of changes in the Work that have been properly authorized by Change Directives, or by interim determinations of the Owner, but not yet included in Change Orders.

**§ 9.3.1.2** Applications for Payment shall not include requests for payment for portions of the Work for which the Design-Builder does not intend to pay the Architect, Consultant, Contractor, material supplier, or other persons or

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                                (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

entities providing services or work for the Design-Builder, unless such Work has been performed by others whom the Design-Builder intends to pay.

**§ 9.3.2** Unless otherwise provided in the Design-Build Documents, payments shall be made for services provided as well as materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Design-Builder with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

**§ 9.3.3** The Design-Builder warrants that title to all Work, other than Instruments of Service, covered by an Application for Payment will pass to the Owner no later than the time of payment. The Design-Builder further warrants that, upon submittal of an Application for Payment, all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Design-Builder's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Design-Builder, Architect, Consultants, Contractors, material suppliers, or other persons or entities entitled to make a claim by reason of having provided labor, materials and equipment relating to the Work.

### § 9.4 Certificates for Payment
The Owner shall, within seven days after receipt of the Design-Builder's Application for Payment, issue to the Design-Builder a Certificate for Payment indicating the amount the Owner determines is properly due, and notify the Design-Builder in writing of the Owner's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

### § 9.5 Decisions to Withhold Certification
**§ 9.5.1** The Owner may withhold a Certificate for Payment in whole or in part to the extent reasonably necessary to protect the Owner due to the Owner's determination that the Work has not progressed to the point indicated in the Design-Builder's Application for Payment, or the quality of the Work is not in accordance with the Design-Build Documents. If the Owner is unable to certify payment in the amount of the Application, the Owner will notify the Design-Builder as provided in Section 9.4. If the Design-Builder and Owner cannot agree on a revised amount, the Owner will promptly issue a Certificate for Payment for the amount that the Owner deems to be due and owing. The Owner may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued to such extent as may be necessary to protect the Owner from loss for which the Design-Builder is responsible because of

- .1   defective Work, including design and construction, not remedied;
- .2   third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Design-Builder;
- .3   failure of the Design-Builder to make payments properly to the Architect, Consultants, Contractors or others, for services, labor, materials or equipment;
- .4   reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
- .5   damage to the Owner or a separate contractor;
- .6   reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
- .7   repeated failure to carry out the Work in accordance with the Design-Build Documents.

**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**§ 9.5.3** If the Owner withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Design-Builder and to the Architect or any Consultants, Contractor, material or equipment suppliers, or other persons or entities providing services or work for the Design-Builder to whom the Design-Builder failed to make payment for Work properly performed or material or equipment suitably delivered.

### § 9.6 Progress Payments
**§ 9.6.1** After the Owner has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Design-Build Documents.

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                                        (1886074471)

§ 9.6.2 The Design-Builder shall pay each Architect, Consultant, Contractor, and other person or entity providing services or work for the Design-Builder no later than the time period required by applicable law, but in no event more than seven days after receipt of payment from the Owner the amount to which the Architect, Consultant, Contractor, and other person or entity providing services or work for the Design-Builder is entitled, reflecting percentages actually retained from payments to the Design-Builder on account of the portion of the Work performed by the Architect, Consultant, Contractor, or other person or entity. The Design-Builder shall, by appropriate agreement with each Architect, Consultant, Contractor, and other person or entity providing services or work for the Design-Builder, require each Architect, Consultant, Contractor, and other person or entity providing services or work for the Design-Builder to make payments to subconsultants and subcontractors in a similar manner.

§ 9.6.3 The Owner will, on request and if practicable, furnish to the Architect, a Consultant, Contractor, or other person or entity providing services or work for the Design-Builder, information regarding percentages of completion or amounts applied for by the Design-Builder and action taken thereon by the Owner on account of portions of the Work done by such Architect, Consultant, Contractor or other person or entity providing services or work for the Design-Builder.

§ 9.6.4 The Owner has the right to request written evidence from the Design-Builder that the Design-Builder has properly paid the Architect, Consultants, Contractors, or other person or entity providing services or work for the Design-Builder, amounts paid by the Owner to the Design-Builder for the Work. If the Design-Builder fails to furnish such evidence within seven days, the Owner shall have the right to contact the Architect, Consultants, and Contractors to ascertain whether they have been properly paid. The Owner shall have no obligation to pay or to see to the payment of money to a Consultant or Contractor, except as may otherwise be required by law.

§ 9.6.5 Design-Builder payments to material and equipment suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

§ 9.6.6 A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Design-Build Documents.

§ 9.6.7 Unless the Design-Builder provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Design-Builder for Work properly performed by the Architect, Consultants, Contractors and other person or entity providing services or work for the Design-Builder, shall be held by the Design-Builder for the Architect and those Consultants, Contractors, or other person or entity providing services or work for the Design-Builder, for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Design-Builder, shall create any fiduciary liability or tort liability on the part of the Design-Builder for breach of trust or shall entitle any person or entity to an award of punitive damages against the Design-Builder for breach of the requirements of this provision.

§ 9.7 Failure of Payment
If the Owner does not issue a Certificate for Payment, through no fault of the Design-Builder, within the time required by the Design-Build Documents, then the Design-Builder may, upon seven additional days' written notice to the Owner, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Design-Builder's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Design-Build Documents.

§ 9.8 Substantial Completion
§ 9.8.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Design-Build Documents so that the Owner can occupy or utilize the Work for its intended use. The date of Substantial Completion is the date certified by the Owner in accordance with this Section 9.8.

§ 9.8.2 When the Design-Builder considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Design-Builder shall prepare and submit to the Owner a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Design-Builder to complete all Work in accordance with the Design-Build Documents.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                          (1886074471)

**§ 9.8.3** Upon receipt of the Design-Builder's list, the Owner shall make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Owner's inspection discloses any item, whether or not included on the Design-Builder's list, which is not sufficiently complete in accordance with the Design-Build Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Design-Builder shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Owner. In such case, the Design-Builder shall then submit a request for another inspection by the Owner to determine Substantial Completion.

**§ 9.8.4** Prior to issuance of the Certificate of Substantial Completion under Section 9.8.5, the Owner and Design-Builder shall discuss and then determine the parties' obligations to obtain and maintain property insurance following issuance of the Certificate of Substantial Completion.

**§ 9.8.5** When the Work or designated portion thereof is substantially complete, the Design-Builder will prepare for the Owner's signature a Certificate of Substantial Completion that shall, upon the Owner's signature, establish the date of Substantial Completion; establish responsibilities of the Owner and Design-Builder for security, maintenance, heat, utilities, damage to the Work and insurance; and fix the time within which the Design-Builder shall finish all items on the list accompanying the Certificate. Warranties required by the Design-Build Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**§ 9.8.6** The Certificate of Substantial Completion shall be submitted by the Design-Builder to the Owner for written acceptance of responsibilities assigned to it in the Certificate. Upon the Owner's acceptance, and consent of surety, if any, the Owner shall make payment of retainage applying to the Work or designated portion thereof. Payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Design-Build Documents.

### § 9.9 Partial Occupancy or Use
**§ 9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Design-Builder, provided such occupancy or use is consented to, by endorsement or otherwise, by the insurer providing property insurance and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Design-Builder have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Design-Build Documents. When the Design-Builder considers a portion substantially complete, the Design-Builder shall prepare and submit a list to the Owner as provided under Section 9.8.2. Consent of the Design-Builder to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Design-Builder.

**§ 9.9.2** Immediately prior to such partial occupancy or use, the Owner and Design-Builder shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**§ 9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Design-Build Documents.

### § 9.10 Final Completion and Final Payment
**§ 9.10.1** Upon receipt of the Design-Builder's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Owner will promptly make such inspection. When the Owner finds the Work acceptable under the Design-Build Documents and the Contract fully performed, the Owner will, subject to Section 9.10.2, promptly issue a final Certificate for Payment.

**§ 9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Design-Builder submits to the Owner (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work, for which the Owner or the Owner's property might be responsible or encumbered, (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Design-Build Documents to remain in force after final payment is currently in effect, (3) a written statement that the Design-Builder knows of no substantial reason that the insurance will not be renewable to cover the period required by the Design-Build Documents, (4) consent of surety, if any, to final payment, (5) as-

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                (1886074471)

constructed record copy of the Construction Documents marked to indicate field changes and selections made during construction, (6) manufacturer's warranties, product data, and maintenance and operations manuals, and (7) if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, or releases and waivers of liens, claims, security interests, or encumbrances, arising out of the Contract, to the extent and in such form as may be designated by the Owner. If an Architect, a Consultant, or a Contractor, or other person or entity providing services or work for the Design-Builder, refuses to furnish a release or waiver required by the Owner, the Design-Builder may furnish a bond satisfactory to the Owner to indemnify the Owner against such liens, claims, security interests, or encumbrances. If such liens, claims, security interests, or encumbrances remains unsatisfied after payments are made, the Design-Builder shall refund to the Owner all money that the Owner may be compelled to pay in discharging such liens, claims, security interests, or encumbrances, including all costs and reasonable attorneys' fees.

**§ 9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Design-Builder or by issuance of Change Orders affecting final completion, the Owner shall, upon application by the Design-Builder, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Design-Build Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Design-Builder to the Owner prior to issuance of payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

**§ 9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from
> .1      liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
> .2      failure of the Work to comply with the requirements of the Design-Build Documents; or
> .3      terms of special warranties required by the Design-Build Documents.

**§ 9.10.5** Acceptance of final payment by the Design-Builder shall constitute a waiver of claims by the Design-Builder except those previously made in writing and identified by the Design-Builder as unsettled at the time of final Application for Payment.

## ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY
**§ 10.1 Safety Precautions and Programs**
The Design-Builder shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

**§ 10.2 Safety of Persons and Property**
**§ 10.2.1** The Design-Builder shall be responsible for precautions for the safety of, and reasonable protection to prevent damage, injury or loss to
> .1      employees on the Work and other persons who may be affected thereby;
> .2      the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Design-Builder or the Architect, Consultants, or Contractors, or other person or entity providing services or work for the Design-Builder; and
> .3      other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, or structures and utilities not designated for removal, relocation or replacement in the course of construction.

**§ 10.2.2** The Design-Builder shall comply with, and give notices required by, applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities, bearing on safety of persons or property, or their protection from damage, injury or loss.

**§ 10.2.3** The Design-Builder shall implement, erect, and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations, and notify owners and users of adjacent sites and utilities of the safeguards and protections.

**§ 10.2.4** When use or storage of explosives or other hazardous materials or equipment, or unusual methods, are necessary for execution of the Work, the Design-Builder shall exercise utmost care, and carry on such activities under supervision of properly qualified personnel.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes: (1886074471)

§ 10.2.5 The Design-Builder shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Design-Build Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3, caused in whole or in part by the Design-Builder, the Architect, a Consultant, a Contractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Design-Builder is responsible under Sections 10.2.1.2 and 10.2.1.3; except damage or loss attributable to acts or omissions of the Owner, or anyone directly or indirectly employed by the Owner, or by anyone for whose acts the Owner may be liable, and not attributable to the fault or negligence of the Design-Builder. The foregoing obligations of the Design-Builder are in addition to the Design-Builder's obligations under Section 3.1.14.

§ 10.2.6 The Design-Builder shall designate a responsible member of the Design-Builder's organization, at the site, whose duty shall be the prevention of accidents. This person shall be the Design-Builder's superintendent unless otherwise designated by the Design-Builder in writing to the Owner.

§ 10.2.7 The Design-Builder shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

§ 10.2.8 Injury or Damage to Person or Property. If the Owner or Design-Builder suffers injury or damage to person or property because of an act or omission of the other, or of others for whose acts such party is legally responsible, written notice of the injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

§ 10.3 Hazardous Materials
§ 10.3.1 Hazardous Substances. Hazardous Substances shall mean any and all substances, materials, chemicals and microorganisms regulated by HSE Requirements or that may be harmful to human health, safety or the environment.

§ 10.3.2 Safety Plan. The Safety Plan shall have the meaning given it in Section 10.5.

§ 10.3.3 HSE Requirements. HSE Requirements shall mean any applicable Owner requirement and any applicable requirement, standard (including, without limitation, environmental cleanup standards) or condition imposed by or pursuant to any and all Legal Requirements governing (i) the use, manufacture, storage, remediation, management, treatment, disposal and release of asbestos, radon, urea-formaldehyde, polychlorinated biphenyls, source materials, nuclear byproducts, special nuclear materials, other radioactive materials, explosives, carcinogens, petroleum products and by-products, manufactured and natural chemicals, toxins, fungi, bacteria, microorganisms, hazardous substances, hazardous materials, and hazardous and solid wastes; and/or (ii) protection of human health, safety or the environment; as such may be amended from time to time. HSE Requirements shall include, without limitation, the requirements of the Clean Air Act, as codified in 42 U.S.C. §§ 7401 *et seq.*, Comprehensive Environmental Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, Toxic Substances Control Act, 15 U.S.C. §§ 2601 *et seq.*, Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.*, Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, Safe Drinking Water Act, 42 U.S.C. §§ 300f *et seq.*, Clean Air Act, Occupational Safety and Health Act, 29 U.S.C. §§ 651 *et seq.*, Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C.§§ 136 *et seq.*, Coastal Zone Management Act, 16 U.S.C. §§ 1451 *et seq.*, and similar or related state and local requirements.

§ 10.3.4 Legal Requirements. Legal Requirements shall mean any and all applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities.

§ 10.3.4 HASP. HASP shall have the meaning given it in Section 10.3.9.

§ 10.3.5 SHSO. SHSO shall have the meaning given it in Section 10.3.12.

§ 10.3.6 The Design-Builder is responsible for ensuring that the Work is executed in full compliance with all applicable HSE Requirements, whether such requirements are specifically mentioned in the Design-Build Documents or not. The Design-Builder shall take all necessary precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to

   .1     employees on the Project and other persons who may be affected thereby;

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                              (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

 .2 the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Design-Builder or the Design-Builder's Subcontractors or sub-subcontractors; and

 .3 other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**§ 10.3.7** The Design-Builder shall comply with and give notices required by applicable HSE Requirements bearing on safety of persons or property or their protection from damage, injury or loss.

**§ 10.3.8** The Design-Builder shall erect and maintain, as required by existing conditions and performance of the Contract, all necessary safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities. This shall also include installation of access control and security provisions to prevent access to the site by unauthorized persons.

**§ 10.3.9** The Design-Builder shall prepare a site-specific Health and Safety Plan (the "HASP") in accordance with HSE Requirements. This HASP must cover all personnel performing Work at the site including direct employees as well as employees of the Design-Builder, its Subcontractors, sub-subcontractors and others as may be required by the Design-Build Documents. Duplication of the general information contained in the Design-Builder's HASP is unnecessary and is incorporated by reference. The level of detail provided in the HASP must be tailored to the type of Work, complexity of operations to be accomplished, and hazards anticipated.

**§ 10.3.10** The Design-Builder shall be responsible for preparation and submittal to the Owner of the HASP, its implementation, and related requirements as specified herein. The HASP must address at a minimum, but not be limited to, the components set forth in this Section 10.3.10. The Owner shall have the right, but not the obligation, to review and approve the HASP, and the Design-Builder shall be solely responsible for carrying out the Work in accordance therewith.

 .1 Identification of key personnel – Identify, by name and by title, the on-site and off-site health and safety personnel responsible for the implementation of health and safety procedures.

 .2 Training – Describe health and safety training requirements for all supervisory and on-site personnel. Training requirements shall also include attending an initial site orientation prior to engaging in any on-site activities. Sign-off sheets acknowledging attendance shall be provided.

 .3 Medical Surveillance – Certify that all supervisory and on-site personnel have received appropriate medical examinations and are able to conduct the tasks required for this Project. This includes medical examinations required by applicable HSE Requirements, respiratory protection, medical evaluations, respirator fit test requirements, and any site specific biological monitoring requirements.

 .4 Hazard/Risk Analysis – Identify and provide a means of mitigating all foreseeable chemical and physical hazards associated with the Work.

 .5 Work Zones – Where applicable, a site plan, which depicts the designation of zones including: (1) Exclusion Zones (EZ), (2) Contamination Reduction Zones (CRZ), and (3) Support Zones (SZ). The level of personal protection for each zone shall be specified by the Design-Builder.

 .6 Personal Safety Equipment and Protective Clothing – Identify personal safety equipment and protective clothing to be used and available on-site (safety glasses, hard hats, safety boots, reflective vests, hearing protection, etc.). This shall include identification of expected levels of special protection (e.g., B, C, and D suits) for certain tasks, and the action levels and protocols for determining and implementing personal protective equipment (PPE) upgrades/downgrades.

 .7 Emergency Response and Contingency Plan – Identify and provide procedures for emergencies arising during Work activities. A route map and directions to the nearest hospital shall also be included.

 .8 Equipment Cleaning – Where applicable, describe methods and procedures for cleaning or decontamination of equipment and property.

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**
(1886074471)

.9     Material Safety Data Sheets – Provide Material Safety Data Sheets (MSDSs) for all chemical materials to be brought on, handled, stored and/or otherwise used at the site by the Design-Builder. MSDSs for any new materials or changes that occur during the Project shall be provided for the Owner prior to the Design-Builder's use of such materials.

.10     Noise Level – Describe methods and procedures for controlling noise levels, as produced by construction activities, to safe and tolerable limits as set forth by Occupational Safety and Health regulations and any applicable State or local codes or ordinances. All construction activities presenting a potential noise nuisance shall be provided with noise muffling devices. Hearing protection shall be required at 85 dBA continuous noise and 137 dB impact or greater.

.11     Dust Management – Describe methods and procedures for managing dust produced by site activities. Describe monitoring methods and action levels to necessitate implementation of dust management measures. The use of any materials other than clean potable water for dust management is prohibited unless approved by the Owner.

.12     Equipment Maintenance – The HASP shall address specific health and safety considerations associated with the maintenance of all equipment, tools and electrical devices. The Design-Builder shall specify maintenance locations, anticipated Work activities and related worker protections, spill response, containment and cleanup, storage of chemical materials, fuels and lubricants, during vehicle and equipment maintenance activities.

.13     Fall Protection – The HASP shall address the fall hazards and controls associated with site Work activities. Walking/working surfaces (horizontal and vertical surfaces) at all construction sites with an unprotected side or edge that is 6 feet (1.8 m) or more above a lower level shall be protected by the use of guard rail systems, safety net systems, or personal fall arrest systems. The Design-Builder shall, and shall require all Subcontractors and sub-subcontractors to, comply with Fall Protection regulations or the equivalent state/local code requirements.

.14     Confined Space Entry – The Design-Builder shall identify the presence or absence of confined space entry Work activities. If entry into tanks, process equipment, sumps, sewers, manholes, trenches, or other spaces identified as a confined space is identified as a Work activity at the site, a confined space entry program must be included in the HASP. The confined space entry program must include requirements for labeling confined spaces, permit requirements, monitoring requirements, PPE, retrieval equipment, training requirements, and emergency rescue and response procedures.

.15     Crane Safety – The HASP shall address the hazards and controls associated with crane, hoist, and rigging operations. This includes personnel training/certification, crane equipment inspection, positioning, and operations: general hoist operations; and rigging equipment inspection and use for material handling via cranes and hoists. Critical lift procedures and planning shall be addressed as required. The Design-Builder shall comply, and shall require all Subcontractors and sub-subcontractors to comply, with applicable all applicable HSE Requirements regarding cranes, derricks, hoists, elevators, and conveyors.

.16     Hot Work – The Design-Builder shall include the requirements for a Hot Work permit system for any welding, burning, open flame, grinding, space-producing or similar activity (for example, abrasive grinders, abrasive saws). The permit shall include, as a minimum, fire prevention procedures, PPE, and gas cylinder safety.

.17     Utility Clearance – The HASP shall address the requirements for buried utility clearance prior to performing Work activities. Sources of information to identify buried utilities include use of a utility locator service, plant drawings, locations of sanitary and storm sewers, electrical conduits, water supply lines, natural gas lines, fuel tanks and lines, and facility personnel knowledgeable of utility location. The HASP shall assess the risk from overhead power lines and ensure adequate clearance distance is maintained.

.18     Hazardous Energy Control – This section shall be included in the HASP if Work activities have the potential to expose any on-site individuals to hazardous energy sources. This includes activities related to the installation, maintenance, service, or repair of machines, equipment, processes, or systems or decommissioning and dismantlement. The Design-Builder shall provide trained and authorized employees to conduct lockout/tagout operations. This section shall include

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA®
Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document,
or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the
law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not
for resale.
User Notes:                                                                                                                    (1886074471)

a site-specific lockout/tagout procedure. It must identify all machines, equipment, electrical installations, processes, or systems that are included in the procedure.

**.19** Excavation – The HASP shall address the hazards and controls associated with excavation Work conducted by the Design-Builder at the Project site. Excavation is defined as any man-made cut, cavity, trench, or depression in an earth surface that is formed by earth removal. Excavation hazards include cave-ins, falls, falling objections, hazardous atmospheres, unstable structures, and excavating into underground utilities. The Design-Builder must, and the Contract shall require all Subcontractors and Sub-Subcontractors to, comply with Excavation Safety regulations, or the equivalent state/local requirements.

**.20** Scaffolds and Ladders – The HASP shall address the hazards and controls associated with the use of scaffolds and ladders to perform Work activities at the Project site. This section would apply to the use of various types of scaffolds, including pole, tube and coupler, fabricated frame, horse, ladder jack, outrigger, interior hung, needle beam, suspended, adjustable suspended, and mobile. It also applies to the various types of ladders that may be used to perform Work activities, including step, extension, and fixed. Hazards that should be addressed in this section include falls to different levels, being struck by falling objects, electrocution and exposure to unstable scaffolds and Work platforms.

**§ 10.3.11** The Design-Builder shall have a fully qualified competent person or persons, as required by HSE Requirements, to inspect the Work and to supervise the conformance of the Work with these regulations.

**§ 10.3.12** The Design-Builder shall provide a Site Health and Safety Officer ("SHSO") for the Project. The SHSO shall be responsible for ensuring the HASP adequately addresses the hazards and controls associated with site Work activities and that employees of the Design-Builder and each Subcontractor and sub-subcontractor comply with all provisions in the HASP. The SHSO may be a multi-duty employee, but should have specific dedicated time to implement a safe work environment for all Work activities.

**§ 10.3.13** If the Contract Sum (as adjusted by either or both Change Orders from time to time) is more than $5,000,000, or if the Project has confined space activities, the Owner has the right to require the Design-Builder to provide at least one full-time dedicated SHSO whose ONLY responsibility is to ensure the health, safety and welfare of all on-site employees performing Project Work. This individual shall also be responsible for the daily inspection of all protective structures and devices implemented by the Design-Builder to ensure the safe, continual and un-interrupted functioning of the ongoing operational activities for the duration of this Contract. The Owner HSE Representative reserves the right to review the background and experience of the SHSO, as well as determine the extent of time that this SHSO is required to spend at the Project site, i.e., full time or # of days per week.

**§ 10.3.14** The Owner reserves the right to review and audit the Design-Builder's safety program and adherence to that program at the site. This includes review of the HASP, all records and documentation relating to HSE Requirements, the environment and worker health and safety, training records and physical site inspections.

**§ 10.3.15** The Design-Builder shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

## § 10.3.16 INJURY OR DAMAGE TO PERSON OR PROPERTY

The Design-Builder shall (a) immediately report, by telephone or in person, any accident, injury, illness, property damage or other serious incident to Owner; (b) conduct an incident investigation (addressing causation and corrective actions) of any death, personal injury or damage to property or the environment resulting from the performance of the Work; (c) provide a copy of the written incident investigation report to Owner within twenty-four (24) hours of the occurrence of each incident and shall allow Owner, if requested, to participate in any incident investigation except to the extent of any applicable evidentiary privilege; and (d) notify any governmental authorities thereof as may be required by HSE Requirements. Design-Builder shall prepare a weekly report of all near misses, and the actions taken by Design-Builder to prevent similar or related near misses in the future.

**§ 10.3.17** The Design-Builder is expressly designated under this Contract as the "responsible employer" for the safety of its personnel under the multi-employer work site requirements of the Occupational Safety and Health Act, 29 U.S.C. §§ 651 *et seq*.

## § 10.3.18 ENVIRONMENTAL COMPLIANCE
**§ 10.3.18.1** The Design-Builder shall, and shall cause its personnel and its direct and indirect subcontractors and their personnel to, comply with HSE Requirements in performing the Work.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                        (1886074471)

§ 10.3.18.2  The Design-Builder shall obtain Owner's prior written approval of all disposal sites prior to any shipment and disposal of Hazardous Substances, and a copy of the disposal waste manifest shall be provided to Owner. The Design-Builder shall be solely responsible for any and all costs and liabilities that may arise from or relate to the transportation of Hazardous Substances to, and their disposal at, a disposal site for which the Design-Builder has not obtained Owner's prior written approval.

§ 10.3.18.3  All work involving potential or known asbestos-containing materials shall be conducted in accordance with Honeywell Corporate Asbestos Procedure HSEMS 369 as well as applicable HSE Requirements.  Asbestos removal and abatement projects must be coordinated through Owner, and only Owner-authorized contractors may perform asbestos removal or abatement.

§ 10.3.18.4  The Design-Builder shall immediately contact Owner should unexpected potential or actual Hazardous Substances be encountered including, without limitation, asbestos-containing materials and lead paint.  The Design-Builder shall immediately cease all Work in the vicinity of such potential or actual Hazardous Substances except as may be necessary to safely secure the premises.  The Design Builder may resume such Work only after Design Builder determines, after consultation with Owner, that Work can continue in compliance with this Contract and applicable HSE Requirements, and in a manner protective of worker and public health and safety and the environment.

§ 10.4 EMERGENCIES  In the event of any emergency affecting safety of persons or property, the Design-Builder shall take immediate action as may be necessary or prudent to prevent and mitigate any injury, damage or loss. Additional compensation or extension of time claimed by the Design-Builder on account of an emergency shall be determined as provided in the Design-Build Documents.

§ 10.5 SAFETY PLAN
The Design-Builder shall comply with the Owner's safety requirements set forth in this Agreement.  In addition, the Design-Builder shall submit to the Owner, for the Owner's approval, a written plan establishing and implementing all safety programs, precautions and measures.  The Design-Builder's preliminary safety plan is attached hereto as **Exhibit E** (the "Safety Plan").

### ARTICLE 11   UNCOVERING AND CORRECTION OF WORK
#### § 11.1 Uncovering of Work
The Owner may request to examine a portion of the Work that the Design-Builder has covered to determine if the Work has been performed in accordance with the Design-Build Documents. If such Work is in accordance with the Design-Build Documents, the Owner and Design-Builder shall execute a Change Order to adjust the Contract Time and Contract Sum, as appropriate. If such Work is not in accordance with the Design-Build Documents, the costs of uncovering and correcting the Work shall be at the Design-Builder's expense and the Design-Builder shall not be entitled to a change in the Contract Time unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs and the Contract Time will be adjusted as appropriate.

#### § 11.2 Correction of Work
#### § 11.2.1 Before or After Substantial Completion.  The Design-Builder shall promptly correct Work rejected by the Owner or failing to conform to the requirements of the Design-Build Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for any design consultant employed by the Owner whose expenses and compensation were made necessary thereby, shall be at the Design-Builder's expense.

#### § 11.2.2 After Substantial Completion
#### § 11.2.2.1 In addition to the Design-Builder's obligations under Section 3.1.12, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Design-Build Documents, any of the Work is found not to be in accordance with the requirements of the Design-Build Documents, the Design-Builder shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Design-Builder a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of the Work, if

AIA Document A141™ – 2014. Copyright ✧ 2004 and 2014 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                                    (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

the Owner fails to notify the Design-Builder and give the Design-Builder an opportunity to make the correction, the Owner waives the rights to require correction by the Design-Builder and to make a claim for breach of warranty. If the Design-Builder fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner, the Owner may correct it in accordance with Section 7.9.

**§ 11.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

**§ 11.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Design-Builder pursuant to this Section 11.2.

**§ 11.2.3** The Design-Builder shall remove from the site portions of the Work that are not in accordance with the requirements of the Design-Build Documents and are neither corrected by the Design-Builder nor accepted by the Owner.

**§ 11.2.4** The Design-Builder shall bear the cost of correcting destroyed or damaged construction of the Owner or separate contractors, whether completed or partially completed, caused by the Design-Builder's correction or removal of Work that is not in accordance with the requirements of the Design-Build Documents.

**§ 11.2.5** Nothing contained in this Section 11.2 shall be construed to establish a period of limitation with respect to other obligations the Design-Builder has under the Design-Build Documents. Establishment of the one-year period for correction of Work as described in Section 11.2.2 relates only to the specific obligation of the Design-Builder to correct the Work, and has no relationship to the time within which the obligation to comply with the Design-Build Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Design-Builder's liability with respect to the Design-Builder's obligations other than specifically to correct the Work.

### § 11.3 Acceptance of Nonconforming Work
If the Owner prefers to accept Work that is not in accordance with the requirements of the Design-Build Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

## ARTICLE 12  COPYRIGHTS AND LICENSES
**§ 12.1** Drawings, specifications, and other documents furnished by the Design-Builder, including those in electronic form, are Instruments of Service. The Design-Builder, and the Architect, Consultants, Contractors, and any other person or entity providing services or work for any of them, shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and shall retain all common law, statutory and other reserved rights, including copyrights. Submission or distribution of Instruments of Service to meet official regulatory requirements, or for similar purposes in connection with the Project, is not to be construed as publication in derogation of the reserved rights of the Design-Builder and the Architect, Consultants, and Contractors, and any other person or entity providing services or work for any of them.

**§ 12.2** The Design-Builder and the Owner warrant that in transmitting Instruments of Service, or any other information, the transmitting party is the copyright owner of such information or has permission from the copyright owner to transmit such information for its use on the Project.

**§ 12.3** Upon execution of the Agreement, the Design-Builder grants to the Owner a limited, irrevocable and non-exclusive license to use the Instruments of Service solely and exclusively for purposes of constructing, using, maintaining, altering and adding to the Project, provided that the Owner substantially performs its obligations, including prompt payment of all sums when due, under the Design-Build Documents. The license granted under this section permits the Owner to authorize its consultants and separate contractors to reproduce applicable portions of the Instruments of Service solely and exclusively for use in performing services or construction for the Project. If the Design-Builder rightfully terminates this Agreement for cause as provided in Section 13.1.4 or 13.2.1 the license granted in this Section 12.3 shall terminate.

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                               (1886074471)

§ **12.3.1** The Design-Builder shall obtain non-exclusive licenses from the Architect, Consultants, and Contractors, that will allow the Design-Builder to satisfy its obligations to the Owner under this Article 12. The Design-Builder's licenses from the Architect and its Consultants and Contractors shall also allow the Owner, in the event this Agreement is terminated for any reason other than the default of the Owner or in the event the Design-Builder's Architect, Consultants, or Contractors terminate their agreements with the Design-Builder for cause, to obtain a limited, irrevocable and non-exclusive license solely and exclusively for purposes of constructing, using, maintaining, altering and adding to the Project, provided that the Owner (1) agrees to pay to the Architect, Consultant or Contractor all amounts due, and (2) provide the Architect, Consultant or Contractor with the Owner's written agreement to indemnify and hold harmless the Architect, Consultant or Contractor from all costs and expenses, including the cost of defense, related to claims and causes of action asserted by any third person or entity to the extent such costs and expenses arise from the Owner's alteration or use of the Instruments of Service.

§ **12.3.2** In the event the Owner alters the Instruments of Service without the author's written authorization or uses the Instruments of Service without retaining the authors of the Instruments of Service, the Owner releases the Design-Builder, Architect, Consultants, Contractors and any other person or entity providing services or work for any of them, from all claims and causes of action arising from or related to such uses. The Owner, to the extent permitted by law, further agrees to indemnify and hold harmless the Design-Builder, Architect, Consultants, Contractors and any other person or entity providing services or work for any of them, from all costs and expenses, including the cost of defense, related to claims and causes of action asserted by any third person or entity to the extent such costs and expenses arise from the Owner's alteration or use of the Instruments of Service under this Section 12.3.2. The terms of this Section 12.3.2 shall not apply if the Owner rightfully terminates this Agreement for cause under Sections 13.1.4 or 13.2.2.

## ARTICLE 13  TERMINATION OR SUSPENSION
### § 13.1 Termination or Suspension Prior to Execution of the Design-Build Amendment
§ **13.1.1** If the Owner fails to make payments to the Design-Builder for Work prior to execution of the Design-Build Amendment in accordance with this Agreement, such failure shall be considered substantial nonperformance and cause for termination or, at the Design-Builder's option, cause for suspension of performance of services under this Agreement. If the Design-Builder elects to suspend the Work, the Design-Builder shall give seven days' written notice to the Owner before suspending the Work. In the event of a suspension of the Work, the Design-Builder shall have no liability to the Owner for delay or damage caused by the suspension of the Work. Before resuming the Work, the Design-Builder shall be paid all sums due prior to suspension and any expenses incurred in the interruption and resumption of the Design-Builder's Work. The Design-Builder's compensation for, and time to complete, the remaining Work shall be equitably adjusted.

§ **13.1.2** If the Owner suspends the Project, the Design-Builder shall be compensated for the Work performed prior to notice of such suspension. When the Project is resumed, the Design-Builder shall be compensated for expenses incurred in the interruption and resumption of the Design-Builder's Work. The Design-Builder's compensation for, and time to complete, the remaining Work shall be equitably adjusted.

§ **13.1.3** If the Owner suspends the Project for more than 90 cumulative days for reasons other than the fault of the Design-Builder, the Design-Builder may terminate this Agreement by giving not less than seven days' written notice.

§ **13.1.4** Either party may terminate this Agreement upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

§ **13.1.5** The Owner may terminate this Agreement upon not less than seven days' written notice to the Design-Builder for the Owner's convenience and without cause.

§ **13.1.6** In the event of termination not the fault of the Design-Builder, the Design-Builder shall be compensated for Work performed prior to termination, together with Reimbursable Expenses then due and any other expenses directly attributable to termination for which the Design-Builder is not otherwise compensated. In no event shall the Design-Builder's compensation under this Section 13.1.6 be greater than the compensation set forth in Section 2.1.

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                              (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

### § 13.2 Termination or Suspension Following Execution of the Design-Build Amendment

§ 13.2.1 Termination by the Design-Builder

**§ 13.2.1.1** The Design-Builder may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Design-Builder, the Architect, a Consultant, or a Contractor, or their agents or employees, or any other persons or entities performing portions of the Work under direct or indirect contract with the Design-Builder, for any of the following reasons:

- **.1** Issuance of an order of a court or other public authority having jurisdiction that requires all Work to be stopped;
- **.2** An act of government, such as a declaration of national emergency that requires all Work to be stopped;
- **.3** Because the Owner has not issued a Certificate for Payment and has not notified the Design-Builder of the reason for withholding certification as provided in Section 9.5.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Design-Build Documents; or
- **.4** The Owner has failed to furnish to the Design-Builder promptly, upon the Design-Builder's request, reasonable evidence as required by Section 7.2.7.

**§ 13.2.1.2** The Design-Builder may terminate the Contract if, through no act or fault of the Design-Builder, the Architect, a Consultant, a Contractor, or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Design-Builder, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Section 13.2.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**§ 13.2.1.3** If one of the reasons described in Section 13.2.1.1 or 13.2.1.2 exists, the Design-Builder may, upon seven days' written notice to the Owner, terminate the Contract and recover from the Owner payment for Work executed, including reasonable overhead and profit, costs incurred by reason of such termination, and damages.

**§ 13.2.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Design-Builder or any other persons or entities performing portions of the Work under contract with the Design-Builder because the Owner has repeatedly failed to fulfill the Owner's obligations under the Design-Build Documents with respect to matters important to the progress of the Work, the Design-Builder may, upon seven additional days' written notice to the Owner, terminate the Contract and recover from the Owner as provided in Section 13.2.1.3.

### § 13.2.2 Termination by the Owner For Cause

**§ 13.2.2.1** The Owner may terminate the Contract if the Design-Builder

- **.1** fails to submit the Proposal by the date required by this Agreement, or if no date is indicated, within a reasonable time consistent with the date of Substantial Completion;
- **.2** repeatedly refuses or fails to supply an Architect, or enough properly skilled Consultants, Contractors, or workers or proper materials;
- **.3** fails to make payment to the Architect, Consultants, or Contractors for services, materials or labor in accordance with their respective agreements with the Design-Builder;
- **.4** repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or
- **.5** is otherwise guilty of substantial breach of a provision of the Design-Build Documents.

**§ 13.2.2.2** When any of the above reasons exist, the Owner may without prejudice to any other rights or remedies of the Owner and after giving the Design-Builder and the Design-Builder's surety, if any, seven days' written notice, terminate employment of the Design-Builder and may, subject to any prior rights of the surety:

- **.1** Exclude the Design-Builder from the site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Design-Builder;
- **.2** Accept assignment of the Architect, Consultant and Contractor agreements pursuant to Section 3.1.15; and
- **.3** Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Design-Builder, the Owner shall furnish to the Design-Builder a detailed accounting of the costs incurred by the Owner in finishing the Work.

**§ 13.2.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 13.2.2.1, the Design-Builder shall not be entitled to receive further payment until the Work is finished.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                        (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

§ 13.2.2.4 If the unpaid balance of the Contract Sum exceeds costs of finishing the Work and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Design-Builder. If such costs and damages exceed the unpaid balance, the Design-Builder shall pay the difference to the Owner. The obligation for such payments shall survive termination of the Contract.

### § 13.2.3 Suspension by the Owner for Convenience
§ 13.2.3.1 The Owner may, without cause, order the Design-Builder in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

§ 13.2.3.2 The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 13.2.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent

    .1    that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Design-Builder is responsible; or

    .2    that an equitable adjustment is made or denied under another provision of the Contract.

### § 13.2.4 Termination by the Owner for Convenience
§ 13.2.4.1 The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

§ 13.2.4.2 Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Design-Builder shall

    .1    cease operations as directed by the Owner in the notice;

    .2    take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and,

    .3    except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing Project agreements, including agreements with the Architect, Consultants, Contractors, and purchase orders, and enter into no further Project agreements and purchase orders.

§ 13.2.4.3 In case of such termination for the Owner's convenience, the Design-Builder shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.


## ARTICLE 15   MISCELLANEOUS PROVISIONS
### § 15.1 Governing Law
The Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 14.4.

### § 15.2 Successors and Assigns
§ 15.2.1 The Owner and Design-Builder, respectively, bind themselves, their partners, successors, assigns and legal representatives to the covenants, agreements and obligations contained in the Design-Build Documents. Except as provided in Section 15.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

§ 15.2.2 The Owner may, without consent of the Design-Builder, assign the Contract to a lender providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Design-Build Documents. The Design-Builder shall execute all consents reasonably required to facilitate such assignment.

§ 15.2.3 If the Owner requests the Design-Builder, Architect, Consultants, or Contractors to execute certificates, other than those required by Section 3.1.10, the Owner shall submit the proposed language of such certificates for review at least 14 days prior to the requested dates of execution. If the Owner requests the Design-Builder, Architect, Consultants, or Contractors to execute consents reasonably required to facilitate assignment to a lender, the Design-Builder, Architect, Consultants, or Contractors shall execute all such consents that are consistent with this Agreement, provided the proposed consent is submitted to them for review at least 14 days prior to execution.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA®
Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document,
or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the
law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not
for resale.
User Notes:                                                                                                         (1886074471)

The Design-Builder, Architect, Consultants, and Contractors shall not be required to execute certificates or consents that would require knowledge, services or responsibilities beyond the scope of their services.

### § 15.3 Written Notice
Written notice shall be deemed to have been duly served if delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended; or if delivered at, or sent by registered or certified mail or by courier service providing proof of delivery to, the last business address known to the party giving notice.

### § 15.4 Rights and Remedies
**§ 15.4.1** Duties and obligations imposed by the Design-Build Documents, and rights and remedies available thereunder, shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**§ 15.4.2** No action or failure to act by the Owner or Design-Builder shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

### § 15.5 Tests and Inspections
**§ 15.5.1** Tests, inspections and approvals of portions of the Work shall be made as required by the Design-Build Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities. Unless otherwise provided, the Design-Builder shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Design-Builder shall give the Owner timely notice of when and where tests and inspections are to be made so that the Owner may be present for such procedures. The Owner shall bear costs of (1) tests, inspections or approvals that do not become requirements until after bids are received or negotiations concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating their cost to the Design-Builder.

**§ 15.5.2** If the Owner determines that portions of the Work require additional testing, inspection or approval not included under Section 15.5.1, the Owner will instruct the Design-Builder to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Design-Builder shall give timely notice to the Owner of when and where tests and inspections are to be made so that the Owner may be present for such procedures. Such costs, except as provided in Section 15.5.3, shall be at the Owner's expense.

**§ 15.5.3** If such procedures for testing, inspection or approval under Sections 15.5.1 and 15.5.2 reveal failure of the portions of the Work to comply with requirements established by the Design-Build Documents, all costs made necessary by such failure shall be at the Design-Builder's expense.

**§ 15.5.4** Required certificates of testing, inspection or approval shall, unless otherwise required by the Design-Build Documents, be secured by the Design-Builder and promptly delivered to the Owner.

**§ 15.5.5** If the Owner is to observe tests, inspections or approvals required by the Design-Build Documents, the Owner will do so promptly and, where practicable, at the normal place of testing.

**§ 15.5.6** Tests or inspections conducted pursuant to the Design-Build Documents shall be made promptly to avoid unreasonable delay in the Work.

### § 15.6 Confidential Information
If the Owner or Design-Builder transmits Confidential Information, the transmission of such Confidential Information constitutes a warranty to the party receiving such Confidential Information that the transmitting party is authorized to transmit the Confidential Information. If a party receives Confidential Information, the receiving party shall keep the Confidential Information strictly confidential and shall not disclose it to any other person or entity except as set forth in Section 15.6.1.

**§ 15.6.1** A party receiving Confidential Information may disclose the Confidential Information as required by law or court order, including a subpoena or other form of compulsory legal process issued by a court or governmental entity. A party receiving Confidential Information may also disclose the Confidential Information to its employees,

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                                        (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

consultants or contractors in order to perform services or work solely and exclusively for the Project, provided those employees, consultants and contractors are subject to the restrictions on the disclosure and use of Confidential Information as set forth in this Contract.

### § 15.7 Capitalization
Terms capitalized in the Contract include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

### § 15.8 Interpretation
§ 15.8.1 In the interest of brevity the Design-Build Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

§ 15.8.2 Unless otherwise stated in the Design-Build Documents, words which have well-known technical or construction industry meanings are used in the Design-Build Documents in accordance with such recognized meanings.

### ARTICLE 16   SCOPE OF THE AGREEMENT
§ 16.1 This Agreement is comprised of the following documents listed below:
.1    AIA Document A141™–2014, Standard Form of Agreement Between Owner and Design-Builder
.2    AIA Document A141™–2014, Exhibit A, Design-Build Amendment, if executed
.3    Exhibit B, Insurance
.4    Exhibit C, Scope of Work
.5    Exhibit D, Bid Form
.6    Exhibit E,
.7    Exhibit F, HSW Workplace Standards

This Agreement entered into as of the day and year first written above.

Honeywell International, Inc.                                      Elder Construction, Inc.

_____                                   _____
OWNER (Signature)                                                    DESIGN-BUILDER (Signature)

Rick Kriva, Vice President of Global Real Estate          Patrick J. Elder, Vice President
(Printed name and title)                                              (Printed name and title)

9/15/2016

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA®
Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document,
or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the
law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not
for resale.
User Notes:                                                                                                      (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

Exhibit B

Insurance

§ 1.1 Except as may otherwise be set forth in the Agreement or elsewhere in the Design-Build Documents (including, without limitation, as set forth below), the Owner and Design-Builder shall purchase and maintain the following types of insurance with limits of liability and deductible amounts and subject to such terms and conditions, as set forth in this Exhibit B.

## § 1.2 DESIGN-BUILDER'S LIABILITY INSURANCE
§ 1.2.1 The Design-Builder shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Design-Builder from claims set forth below that may arise out of or result from the Design-Builder's operations under the Design-Build Contract and for which the Design-Builder may be legally liable, whether such operations be by the Design-Builder, by a Design-Builder or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

    .1    claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;

    .2    claims for damages because of bodily injury, occupational sickness or disease, or death of the Design-Builder's employees;

    .3    claims for damages because of bodily injury, sickness or disease, or death of any person other than the Design-Builder's employees;

    .4    claims for damages insured by usual personal injury liability coverage;

    .5    claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

    .6    claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

    .7    claims for bodily injury or property damage arising out of completed operations; and

    .8    claims involving contractual liability insurance applicable to the Design-Builder's obligations under the Design-Build Documents.

§ 1.2.2 The insurance required by Section 1.2.1 shall be written for not less than limits of liability specified in the Design-Build Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment. If coverage is to be provided on a claims-made basis, such coverage will have a retrospective date prior to commencement of the Work, and such coverage shall be maintained for a period of the greater of the applicable statute of limitations or three years following completion of the Work.

§ 1.2.3 Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this Section 1.2 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Design-Builder with reasonable promptness in accordance with the Design-Builder's information and belief.

## § 1.3 OWNER'S LIABILITY INSURANCE
§ 1.3.1 The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

## § 1.4 PROPERTY INSURANCE
§ 1.4.1 Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk, "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus the value of subsequent Design-Build Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis. Such property insurance shall be maintained until final payment has been made.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                                (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

§ 1.4.1.1 Property insurance shall be on an "all-risk" or equivalent policy form and shall include insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, testing and startup, temporary buildings and debris removal, including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Design-Builder's services and expenses required as a result of such insured loss.

§ 1.4.1.2 If the Owner does not intend to purchase such property insurance required by the Design-Build Contract and with all of the coverages in the amount described above, the Owner shall so inform the Design-Builder in writing prior to commencement of the Work. The Design-Builder may then effect insurance that will protect the interests of the Design-Builder, Design-Builders and Subcontractors in the Work, and, by appropriate Change Order, the cost thereof shall be charged to the Owner.

§ 1.4.1.3 If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

§ 1.4.1.4 This property insurance shall cover portions of the Work stored off the site and also portions of the Work in transit.

§ 1.4.2 Boiler and Machinery Insurance. The Owner shall purchase and maintain boiler and machinery insurance required by the Design-Build Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner.

§ 1.4.3 Loss of Use Insurance. The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused.

§ 1.4.4 Waivers of Subrogation. The Owner and Design-Builder waive all rights against each other and any of their Contractors, Subcontractors, Sub-Subcontractors, agents and employees, each of the other, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 1.4 and 1.6 or other property insurance applicable to the Work, except for such property damage caused by the willful misconduct or gross negligence of the other.

§ 1.4.8 A loss insured under Owner's property insurance shall be adjusted by the Owner.

§ 1.4.10 The Owner shall have power to adjust and settle a loss with insurers.

## § 1.5 PERFORMANCE BOND AND PAYMENT BOND
§ 1.5.1 The Owner shall have the right to require the Design-Builder to furnish bonds covering faithful performance of the Design-Build Contract and payment of obligations arising thereunder, including payment to design professionals engaged by or on behalf of the Design-Builder, as stipulated in bidding requirements or specifically required in the Agreement or elsewhere in the Design-Build Documents on the date of execution of the Design-Build Contract.

## § 1.6 ADDITIONAL INSURANCE PROVISIONS
§ 1.6.1    The Design-Builder shall provide and maintain, at the Design-Builder's sole cost and expense (including deductibles) during the course of construction at the Project site, and thereafter as specified below, insurance acceptable to the Owner for protection from claims which may arise out of or result from the Design-Builder's operations under the Design-Build Documents, whether such operations be by the Design-Builder or by any Subcontractor, sub-subcontractor, supplier or materialman, or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable, in accordance with the following minimum requirements.  All insurance shall be with insurance companies having a minimum rating or equivalent to A-VIII by A.M. Best & Company, shall be primary and non-contributory to coverage maintained and/or available to Owner, and contain waivers of insurers' rights of subrogation against Owner.

.1      Worker's compensation insurance meeting all statutory and legal requirements and employer's liability insurance with minimum limits of not less than the following:

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                                    (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

| | |
|---|---|
| Bodily Injury by accident | $1,000,000 each accident |
| Bodily Injury by disease | $1,000,000 policy limit |
| Bodily Injury by disease | $1,000,000 each employee |

.2      Commercial General Liability insurance with limits of not less than the following, using the equivalent of the Insurance Services Offices form CG 00 01 most current edition:

| | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| Personal and Advertising Injury Limit | $1,000,000 |
| Products/Completed Operations Aggregate Limit | $2,000,000 |
| General Aggregate Limit Other than Products/Completed Operations | $2,000,000 |

.4      Professional Liability Coverage          $5,000,000 per claim

.5      For all vehicles used in connection with the Work, commercial automobile liability insurance for both property damage and bodily injury claims with a combined limit of not less than $1,000,000 per accident. Said automobile insurance shall include employer's owned, non-owned, leased, rented and hired vehicle coverage.

.6      In addition to the above primary limits, excess liability insurance with limits of not less than the following:

| | |
|---|---|
| Each Occurrence Limit | $50,000,000 |
| General Aggregate | $50,000,000 |
| Products/Completed Operations Aggregate Limit | $50,000,000 |

.7      All Commercial General liability and excess liability policy forms, as applicable, must include the following:

(a)      Premises and operations with no Explosion, Collapse or Underground Property Damage Hazard exclusions.

(b)      Products and completed operations coverage (the Design-Builder agrees to maintain this coverage for a minimum of four (4) years following completion of its work and to continue to name Owner, the Owner's Representative, their respective directors and officers, and the Owner's lender as additional insured(s) for the entire 4-year period).

(c)      Endorsements, in ISO Form CG 2010 and CG 2037 or equivalent, naming the Owner, the Owner's Representative, their respective directors and officers, and the Owner's lender as additional insured(s) with respect to liability arising out of or resulting from the operations and completed operations of the named insured. This provision, with applicable ISO Form, shall apply to all insurances required in this Section 1.6, except for Workers Compensation, Employers Liability and Professional Liability.

(d)      An Electronic Data Liability endorsement, in ISO Form CG 04 37 12 04.

(e)      An endorsement stating that the coverage afforded by the policy for the benefit of the additional insured(s) is primary and any other liability coverage maintained by such additional insured(s) shall be non-contributory with the coverage provided under the policy.

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA**ⁱ Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIAⁱ Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                      (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

(f) An endorsement, in ISO Form CG 2404 or its equivalent, stating that the insurer waives its right to subrogation.

(g) Coverage shall be on an "occurrence" form with the exception of the Pollution Liability and Professional Liability policies which can be claims made. Any retroactive date on such claims made policies shall be prior to the date of any commencement of Work under this contract.-

(h) An endorsement stating that the General Aggregate Limit applies on a "per project" basis.

(i) The Design-Builder shall provide a 30 day written notice to the Certificate holders of cancellation, for reasons other than non-payment of premium in which ten (10) days' notice will be provided. In addition, policies shall provide that insurers will waive rights of subrogation against the additional insureds. Each policy shall be primary without right of contribution from other insurance carried by the additional insureds

(j) Policies shall include a severability of interest clause.

.8 Property Damage Insurance Covering all tools and construction equipment owned, leased or borrowed by Design-Builder and its employees, for the full replacement value of said tools and equipment.

Unless the Owner agrees in writing to the contrary for individual Subcontractors, the Design-Builder shall require, in writing, each Subcontractor to provide and maintain, at the Subcontractor's sole cost and expense (including deductibles) during the course of construction at the Project site, and thereafter as specified below, insurance acceptable to the Owner for protection from claims which may arise out of or result from the Subcontractor's operations under the Design-Build Documents, whether such operations be by the Subcontractor or by any sub-subcontractor, supplier or materialman, or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable, in accordance with the following minimum requirements:

.1 Worker's compensation insurance meeting all statutory and legal requirements and employer's liability insurance with minimum limits of not less than the following:

| | |
|---|---|
| Bodily Injury by accident | Statutory limits or $1,000,000, whichever is greater, each accident |
| Bodily Injury by disease | Statutory limits or $1,000,000, whichever is greater |
| Bodily Injury by disease | Statutory limits or $1,000,000, whichever is greater. |

.2 Commercial General Liability insurance with limits of not less than the following, using the equivalent of the Insurance Services Offices form CG 00 01 most current edition:

| | |
|---|---|
| Each Occurrence Limit | $2,000,000 |
| Personal and Advertising Injury Limit | $1,000,000 |
| Products/Completed Operations Aggregate Limit | $2,000,000 |
| General Aggregate Limit (Other than Products/Completed Operations) | $2,000,000 |

.3 For all vehicles used in connection with the Work, commercial automobile liability insurance for both property damage and bodily injury claims with a combined limit of not less than $1,000,000 per accident. Said automobile insurance shall include employer's owned, non-owned, leased, rented and hired vehicle coverage.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                                                                                                      (1886074471)

.4      Pollution Liability insurance shall be required per the Design-Builder's subcontract agreement.

.5      In addition to the above primary limits, excess liability insurance with limits of not less than the following:

| | |
|---|---|
| Each Occurrence Limit | $5,000,000 |
| General Aggregate | $5,000,000 |
| Products/Completed Operations Aggregate Limit | $5,000,000 |

.6      All liability and excess liability policy forms must include the following:

(a)      Premises and operations with no Explosion, Collapse or Underground Property Damage Hazard exclusions.

(b)      Products and completed operations coverage (the Subcontractor agrees to maintain this coverage for a minimum of two (2) years following completion of its work and to continue to name the Owner, its members, the Owner's Representative, their respective directors and officers, and the Owner's lender as additional insured(s) for the entire 2-year period).

(c)      Endorsements, in ISO Form CG 2010 and CG 2037 or equivalent, naming the Owner, its members, the Owner's Representative, their respective directors and officers, and the Owner's lender as additional insured(s) with respect to liability arising out of or resulting from the operations and completed operations of the named insured. This provision, with applicable ISO Form, shall apply to all insurances required in this section, except for Workers Compensation, Employers Liability and Professional Liability.

(d)      An endorsement stating that the coverage afforded by the policy for the benefit of the additional insured(s) is primary and any other liability coverage maintained by such additional insured(s) shall be non-contributory with the coverage provided under the policy.

(e)      An endorsement, in ISO Form CG 202404 or its equivalent, stating that the insurer waives its right to subrogation. This provision, with applicable ISO Form, shall apply to all insurances required in this Section.

(f)      Coverage shall be on an "occurrence" form with the exception of Pollution liability and Professional Liability policies which may be claims made. Any retroactive date on such claims made policies shall be prior to the date of any commencement of Work under the contract.

(g)      An endorsement stating that the General Aggregate Limit applies on a "per project" basis.

7.      Professional liability coverage shall be required of any subcontractors that have a design or engineering scope of work as outlined in the Design-Builders subcontract agreement.

.8      Property Damage Insurance Covering all tools and construction equipment owned, leased or borrowed by Subcontractor and its employees, for the full replacement value of said tools and equipment.

AIA Document A141™ – 2014. Copyright © 2004 and 2014 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
User Notes:                  (1886074471)

Exhibit C

<u>Scope of Work</u>



**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA**® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                              (1886074471)

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

# REDACTED

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

REDACTED

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

# REDACTED

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

# REDACTED

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

REDACTED

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

# REDACTED

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

REDACTED

Exhibit D

<u>Approved Project</u>



**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA**ᴱ Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA**ᴱ** Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                                          (1886074471)

EXHIBIT D

## EXHIBIT D - Bid Form
## PROJECT 9-iron

| Category | Unit | Unit Cost | Quantity | Total Cost | |
|---|---|---|---|---|---|
| Design | 1 | | | $59,500.00 | |
| Architectural | | | | $0.00 | |
| Structural | | | | $0.00 | |
| Mechanical | | | | $0.00 | |
| Electrical | | | | $0.00 | |
| Additional | | | | $0.00 | |
| | | | | | |
| **Subtotal Design** | | | | **$59,500.00** | |
| | | | | | |
| 1 Permits/General, all Total | 1 | $32,500.00 | | $32,500.00 | |
| | | | | | *Percentage based on target of |
| 1 General Requirements, all Total % | 9.45% | $800,000.00 | | $75,600.00 | $800K direct work managed |
| | | | | | *Percentage based on target of |
| 1 Construction Fee Total- % | 7.25% | $800,000.00 | | $58,000.00 | $800K direct work managed |
| **Subtotal Permit/GC's/Fee** | | | | **$166,100.00** | |
| Permit Fees include the following based on Direct Value of $800k | | | | | |
| Building Plan Review Fee $3,028.28 | | | | | |
| Building Fee $4,659 | | | | | |
| Use Tax $16,600 | | | | | |
| Fire Department Review $7,694 | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **Subtotals Other** | | | | **$166,100.00** | |
| | | | | | |
| | | | | | Your Organizations Lump Sum |
| | | | | | Price as per the tender |
| | | | Total Cost | **$391,700.00** | documents |

| Mandatory Alternate Pricing (Not to be included above) | |
|---|---|
| Description | Total Cost |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| Voluntary Alternate Pricing (Not to be included above) | | | | |
|---|---|---|---|---|
| (VE and other cost or schedule reducing opportunities) | | | | |
| Category | Unit | Unit Cost | Quantity | Total Cost |
| 1 (to be filled by vendor) | | | | $0.00 |
| 2 | | | | $0.00 |
| 3 | | | | $0.00 |
| 4 | | | | $0.00 |
| 5 | | | | $0.00 |
| 6 | | | | $0.00 |
| 7 | | | | $0.00 |
| 8 | | | | $0.00 |
| 9 | | | | $0.00 |

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

Exhibit E

Non-Disclosure Agreement



Non-Disclosure
Agreement



**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA¹ Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA¹ Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                              (1886074471)

45

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

Exhibit E

| **Honeywell** | **NON-DISCLOSURE AGREEMENT - COMMERCIAL PROGRAM**<br>**FOR EXCHANGE OF TECHNICAL AND COMMERCIAL INFORMATION ONLY** |
|---|---|

This Non-Disclosure Agreement ("Agreement") governs the disclosure and use of Confidential Information, and is made as of the Effective Date by and between Honeywell International Inc., on behalf of itself and its Affiliates having a place of business at 101 Columbia Road, Morristown, New Jersey 07962, ("Honeywell") and Company, as defined below.

The parties agree as follows:

**1. Definitions:**

**"Affiliate"** means any legal entity that controls, is controlled by, or is under common control with, another legal entity. An entity is deemed to "control" another if it owns directly or indirectly a sufficient voting interest to elect a majority of the directors or managing authority or to otherwise direct the affairs or management of the other entity.

**"Company"** means the party executing this Agreement with Honeywell as identified in Section A, "The Parties."

**"Confidential Information"** means any information in any form that is disclosed to Recipient by or on behalf of Discloser that is not generally known including, without limitation, trade secrets, know how, samples, techniques, specifications, drawings, designs, design concepts, processes, and testing methodologies including the information described in Section D, "Confidential Information to be Disclosed by the Parties." Information will not be considered as Confidential Information unless (a) marked "CONFIDENTIAL" or "PROPRIETARY" at the time of disclosure or (b) disclosed orally or visually but identified as confidential at the time of disclosure and thereafter designated as confidential in a writing sent to Recipient within 30 days of disclosure summarizing the Confidential Information sufficiently for identification.

**"Discloser"** means a party disclosing Confidential Information under this Agreement.

**"Personal Data"** means any information relating to an identified or identifiable natural person; an identifiable person is the person who can be identified, directly or indirectly, in particular by reference to an identification number or to one or more factors specific to his physical, psychological, mental, economic, cultural or social identity.

**"Purpose"** means the purpose set forth in Section E, "Purpose."

**"Recipient"** means a party receiving Confidential Information under this Agreement.

**2. Use of Confidential Information:** Either party may (a) disclose the Confidential Information only to its employees, officers, directors, consultants, sales representatives, distributors, subcontractors, contract employees, and Affiliates who are required to have the Confidential Information to achieve the Purpose and who are legally bound in writing to Recipient to maintain and use the Confidential Information in accordance with the terms of this Agreement and (b) use the Confidential Information only for the Purpose. Recipient will not (a) disclose Confidential Information to any other person without the prior written consent of the Discloser or, (b) decompile, disassemble, decode, reproduce, redesign, or reverse engineer any samples or computer software containing Confidential Information or any part thereof provided to Recipient. Recipient may make a limited number of copies of any documents containing Confidential Information as necessary to achieve the Purpose. Recipient will reproduce the restrictive legends of the original on all copies it makes. Recipient will protect Confidential Information using the same degree of care, but no less than reasonable care, as it uses to protect its own confidential information. This Agreement will not be construed to limit either party's right to independently develop or acquire, manufacture, sell, license or maintain products, services or technology without use of the other party's Confidential Information including products, services or technologies that are similar to or competitive with the other party's Confidential Information.

**3. Personal Data Protection:** The Recipient agrees that it will process Personal Data only for the Purpose and in accordance with the instructions of the Discloser. If the Recipient cannot comply with this requirement for whatever reason, it will promptly inform the Discloser and the Discloser will be entitled to suspend the transfer of Personal Data or terminate this Agreement. The Recipient further

agrees that it will promptly notify the Discloser about: (a) any legally binding request for disclosure of the Personal Data by a law enforcement authority (unless otherwise prohibited); (b) any accidental or unauthorized processing of Personal Data; and (c) any requests received from an individual to whom the Personal Data relates without responding to that request, unless it has been otherwise authorized to do so. The Recipient will take appropriate technical and organizational measures as are required by the Discloser to protect the Personal Data.

**4. Exclusions:** Confidential Information will not include any information that (a) was in Recipient's possession and not subject to an obligation of confidentiality before receipt from Discloser, (b) has become legally available in the public domain through no fault of Recipient, (c) was rightfully received by Recipient from a third party who had no obligation of confidentiality to Discloser, (d) was independently developed by Recipient without use of Confidential Information. If Recipient is required to disclose Confidential Information pursuant to applicable law, statute, regulation, or court order, Recipient will give Discloser prompt written notice of the request to provide a reasonable opportunity to object to the disclosure in order to secure a protective order or appropriate remedy. Recipient may disclose only the Confidential Information required and only to the extent compelled to do so by applicable law, statute, regulation, or court order.

**5. Return:** Upon written request after the expiration or termination of this Agreement Recipient will return or destroy all Confidential Information and all copies thereof and will certify in writing that all materials containing Confidential Information have been returned or destroyed within 30 days of Discloser's request.

**6. Remedies:** The parties agree that breach of this Agreement by the Recipient will cause irreparable damage for which money damages will not be fully adequate, and Discloser is entitled to seek injunctive relief, in addition to any other legal remedies.

**7. Successors and Assigns:** Except for the sale by Honeywell of the business or product line to which this Agreement relates neither party may assign or transfer its obligations under this Agreement to any party without the prior written consent of the other party, which consent will not be unreasonably withheld. Any purported assignment without such consent will be void.

**8. Governing Law:** This Agreement will be governed by the laws of New York, USA without regard to conflicts of law principles.

**9. No License or Patent Rights Granted:** Nothing in this Agreement grants or confers any rights by license or otherwise, express or implied, to any trade secret, copyright, invention, discovery, or to any patent, or other intellectual property right, by either party to the other nor does this Agreement grant Recipient any rights in or to the Discloser's Confidential Information, except for the limited right to use and disclose the Confidential Information solely for the Purpose.

**10. No Warranty; Relationship of the Parties:** Information provided under this Agreement is provided "AS IS." Discloser has no liability arising from Recipient's use of the Confidential Information. This Agreement governs the use and non-disclosure of Confidential Information only and does not create a joint venture, partnership, agency or commercial relationship between the parties nor does it bind either party to enter into any further relationship.

**11. General:** This Agreement constitutes the entire agreement of the parties relating to its subject matter. All modifications to this Agreement must be in writing signed by both parties. Recipient will not export any Confidential Information in violation of law or regulations. Failure to enforce any provision of this Agreement will

| **Honeywell** | **NON-DISCLOSURE AGREEMENT - COMMERCIAL PROGRAM**<br>**FOR EXCHANGE OF TECHNICAL AND COMMERCIAL INFORMATION ONLY** |
|---|---|

not constitute a waiver of any term of this Agreement. This Agreement may be signed in one or more counterparts (including faxed or scanned copies), which together will be deemed to be one original. Reproductions of this executed original (with reproduced signatures) will be deemed to be original counterparts of this Agreement. If any term of this Agreement is determined to be illegal, invalid or unenforceable, the validity and enforceability of the remaining terms will not be affected.

**12. Termination of Agreement; Continuing Obligation:** This Agreement will expire three years after the Effective Date unless earlier terminated in accordance with this Section 12. Either party may terminate this Agreement with 30 day prior written notice. Notwithstanding the foregoing, each party's obligations of confidentiality with respect to the other party's Confidential Information will continue for a period of seven years following the expiration or termination of this Agreement.

**A. The Parties:** This Non-Disclosure Agreement is made and entered by and between Honeywell and _____ having a place of business at _____ ("Company").

**B. Representatives:** The parties have appointed the following individuals to generally coordinate the disclosure and receipt of Confidential Information:

| Honeywell | Company  Elder Construction, Inc. |
|---|---|
| Name: Brian Higgins | Name:  Patrick J. Elder |
| Title: Procurment Mgr, Global Real Estate & Construction | Title:  Vice President |
| Address: 1300 W. Warner Road | Address:  3431 N. Prospect Street |
| Tempe, AZ 85284 | Colorado Springs CO 80907 |
| Telephone: (480)592-4581 | Telephone: 719.741.2708 |
| Fax: | Fax:  719.471.2709 |

**C. Notices:** Notices will be in writing and sent to each party at its address below which may be changed upon written notice. Notices will be effective upon receipt.

| Honeywell | Company  Elder Construction, Inc. |
|---|---|
| Name: | Name:  Patrick J. Elder |
| Title: | Title:  Vice President |
| Address: | Address:  3431 N. Prospect Street |
| | Colorado Springs CO 80907 |
| Telephone: | Telephone: 719.741.2708 |
| Fax: | Fax:  719.471.2709 |

**D. Confidential Information to be disclosed by the Parties:**

| Honeywell | Company |
|---|---|
| Business roadmaps and specific project details with Project Edmonton for the Honeywell Edmonton office and site. | |

**E. Purpose:** The Recipient of Confidential Information will use the information for the following purpose:

| To develop cost estimates, bid proposals, designs, plans, schedules, that support Project Edmonton. |
|---|

**F. Effective Date:** This Agreement becomes effective on _____
The parties' authorized representatives have executed this Agreement effective as of the Effective Date.

Honeywell International Inc.

By: _____

Name  Rick Kriva

Title:  VP-Global Real Estate

Date:  9/15/2016

Company  Elder Construction, Inc.

By: _____

Name:  Patrick J. Elder

Title:  Vice President

Date:  July 13, 2016

DocuSign Envelope ID: 188DA2E4-B6C0-41B8-BF38-EC9634892399

Exhibit F

<u>HSW Workplace Standards</u>

<u>Work Place Standards</u>.  The Owner and the Design-Builder agree that they unintentionally omitted from the execution draft of the Agreement the Owner's Work Place Standards attached hereto as **Exhibit A** (the "<u>Work Place Standards</u>").  The parties agree that the Work Place Standards are included in the Agreement as of the date on which the Agreement was fully executed, and the Design-Builder agrees to perform the Work in accordance with the Work Place Standards.

(See Attached)

HWS v17 Final.pdf

**AIA Document A141™ – 2014.** Copyright © 2004 and 2014 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:03:00 on 05/04/2016 under Order No.2800918676_1 which expires on 01/24/2017, and is not for resale.
**User Notes:**                                                                                                                       (1886074471)

## AMENDMENT

This Amendment No.2 to AIA Contract A141-2014  Agreement **("Amendment")** is made on May 31ˢᵗ 2017  by and between Honeywell International Inc, with offices at 115 Tabor Road, Morris Plains, NJ 07950  ("**Honeywell**"), and Elder Construction, Inc. with offices at 3431 N Prospect Street, Colorado Springs, CO 80907   **("Alliance Firm")**. "**Parties**" means Honeywell and Supplier and "**Party**" means either of them individually.

WHEREAS, the Parties have entered into an AIA A141  Agreement, dated September 12ᵗʰ, 2016 as may have been amended, amended and restated, supplemented or otherwise modified from time to time in accordance with its provisions (collectively the "**Agreement**"); and

WHEREAS, the Parties hereto desire to amend the Agreement  on the terms and subject to the conditions set forth herein in order to incorporate some additional terms and conditions applicable to Design Build work (as defined herein) to be provided by the Alliance Firm under the Agreement;

NOW, THEREFORE, in consideration of the premises set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      **CHANGE IN CONTRACT VALUE**

   (a)     "Addition of GMP for Phase 2" amending the original contract value to include the Phase 2 Guaranteed Maximum Price (GMP) in the amount of $2,792,564.12

| Changes to date | $3,327,811.88 |
|---|---|
| Amount This Change | $2,792,564.12 |
| **Total Contract Value** | **$6,120,376.00** |

3. OTHER TERMS

   (a)      This Amendment will be deemed effective on the date first written above ("Amendment Effective Date"). On and after the Amendment Effective Date, each reference in the Agreement to "this Agreement," "the Agreement," "hereunder," "hereof," "herein" or words of like meaning, will mean and be a reference to the Agreement as amended by this Amendment.

   (b)      This Amendment constitutes a valid amendment of the Agreement and constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, whether written or oral, with respect to the subject matter contained in this Amendment, unless expressly otherwise agreed in writing.  Except as expressly provided in this Amendment, all of the terms and provisions of the

Agreement are and will remain in full force and effect and are hereby ratified and confirmed by the Parties.

(c)     All references to Exhibits in this Amendment are to Exhibits attached to this Amendment unless a more specific reference is included.

(d)     All terms and conditions of the Agreement as amended by this Amendment shall apply to this Amendment.  If there is any inconsistency or ambiguity between any of the express terms of this Amendment and the Agreement, then this Amendment shall control.

(e)     This Amendment may be signed in one or more counterparts (including faxed or electronically scanned copies), each of which will be deemed one and the same original. Reproductions of this executed original (with reproduced signatures) will be deemed to be original counterparts of this Amendment.

IN WITNESS WHEREOF, the Parties have each caused this Amendment to be signed and delivered by its duly authorized representative, effective as of the date first written above.

**AGREED TO:**                                            **AGREED TO:**
**Honeywell**                                             **Supplier**

By: _Rick K._____          By: _Patrick Elder_____
      3ACE2274020C496...                                 A76F6B1003B74ED...

Name: _Rick Kriva_____     Name: _Patrick Elder_____

Title: _VP-Global Real Estate___ Title: _Vice President_____

Date: _6/13/2017_____      Date: _6/7/2017_____

**CO41 Broomfield**
Guaranteed Maximum Price Proposal - Phase 1 & 2 Breakout
May 17, 2017

  



| Description | Takeoff Quantity | Total Cost / Unit | Phase 1 | Phase 2 | Total Amount | Notes |
|---|---|---|---|---|---|---|
| **Subtotal Direct Costs** | | **$** | **2,256,435** | **$ 3,006,000** | **$ 5,262,434** | **$152.74/SF** |
| Plan Review & Permit | | $ | - | $ - | $ - | Paid w/ OCO #006 |
| Use Tax | | $ | - | $ - | $ - | Paid w/ OCO #006 |
| Fire Authority Review | | $ | 15,868 | $ - | $ 15,868 | North Metro Fire |
| Builder's Risk | | $ | 1,349 | $ 1,698 | $ 3,047 | |
| 4.00% Const. Contingency | | $ | 112,389 | $ 141,495 | $ 253,884 | |
| 4.00% Owner Contingency | | $ | 112,389 | $ 141,495 | $ 253,884 | |
| 5.00% Overhead and Profit | | $ | 131,496 | $ 173,194 | $ 304,690 | |
| 5.00% HBS Manage Fee | | $ | 14,823 | $ 11,747 | $ 26,570 | |
| **Subtotal Indirect Costs** | | **$** | **388,313** | **$ 469,629** | **$ 857,942** | **$24.90/SF** |
| **Subtotal Construction Costs** | | **$** | **2,644,748** | **$ 3,475,629** | **$ 6,120,376** | |
| **Total Construction Cost / SF** | | **$** | **214.74** | **$ 157.00** | **$ 177.64** | |

| Allowances & Alternates | Tab | Phase 1 | Phase 2 | Total |
|---|---|---|---|---|

Exhibit B

# Honeywell

December 17, 2018

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Patrick Elder, Vice President
Elder Construction, Inc.
3431 N. Prospect Street
Colorado Springs, Colorado 80907

RE:    **Honeywell International Inc./ Elder Construction, Inc. – 303 Technology Drive –
Project 9-Iron Broomfield, Colorado Project**

Dear Mr. Elder:

I am writing to formally inform Elder Construction, Inc. ("Elder") that Honeywell International, Inc. ("Honeywell") will be retaining a separate consultant to re-design the lab HVAC system to meet the Project's temperature and humidity control requirements.   As further set forth below, Honeywell will seek to recover from Elder all costs it incurs in re-designing and constructing the system, in addition to all related costs in loss of productivity and profit.

As you are aware, Honeywell notified Elder early this Year of the Project's failure to meet the temperature and humidity control requirements in 3 specific areas of the building (H-Lab -2,148 SF, CAT Lab 1 – 1,545 SF and CAT lab 2 – 1,525 SF).  Honeywell invoked its contractual rights pursuant to, among other things, the warranty clause in Section 11.2.2.1 of the Design-Build Contract between Honeywell and Elder ("Contract") and notified Elder of the failure, providing it an opportunity to correct the condition.  While Elder attempted to correct the problem earlier in the Year with several "band-aide" approaches, each failed to meet the temperature and humidity control requirements.  The most recent re-design proposed by Elder in August by its own admission would not result in the three rooms meeting the temperature and humidity control requirements.  After having provided Elder with ample opportunity to correct, Honeywell has no choice but to proceed under Section 7.9 of the Contract and engage another consultant who is capable of meeting the design requirements.  Honeywell will hold Elder responsible for all costs it incurs in the new design and construction, in addition to the loss of productivity and profit as a result of such areas being rendered unusable while the repairs are being performed.

Honeywell would like to amicably resolve its claim against Elder, and asks that you kindly contact Rob Wolter at 312-615-6262 to discuss this matter in further detail.

Very truly yours,

Daniel Kirschner
Vice President, Global Real Estate

cc:     Robert A. Wolter (robert.wolter@honeywell.com)
        Austin Dodder (austin@elderconstructioninc.com)
        Ryan Brunk (ryan.brunk@elderconstructioninc.com)

# Exhibit C



**GLOBAL REAL ESTATE**
**21925 Field Parkway, Suite 220**
Deer Park, IL 60010
www.honeywell.com

June 13, 2019

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Patrick Elder, Vice President
Elder Construction, Inc.
3431 N. Prospect Street
Colorado Springs, Colorado 80907

RE:   **Honeywell International Inc. / Elder Construction, Inc. – 303 Technology Drive –**
      **Project 9-Iron Broomfield, Colorado – Notice of Claim**

Dear Mr. Elder:

  Please accept the following letter as Honeywell International, Inc.'s ("Honeywell") formal Notice of Claim to Elder Construction, Inc. ("Elder") pursuant to Colorado's Construction Defect Action Reform Act ("CDARA"). Although Elder is already aware of Honeywell's claims through communications with Honeywell over the past year and the formal correspondence sent to Elder on December 17, 2018, Honeywell is once again providing Elder with notice of its claim in an effort to resolve this matter prior to instituting suit[1].

  As you are aware, Honeywell notified Elder last year of Project 9-Iron's failure to meet the temperature and humidity control requirements in 3 specific areas of the building (HLAB 2,148 SF, CAT Lab 1 – 1,545 SF and CAT lab 2 – 1,525 SF). Specifically, the labs were to remain at a temperature of 70 degrees Fahrenheit with a deviation of no more than +/-0.36 degrees Fahrenheit, with relative humidity at 40% with a deviation of no more than +/- 5%. Honeywell invoked its contractual rights pursuant to, among other things, the warranty clause in Section 11.2.2.1 of the Design-Build Contract between Honeywell and Elder ("Contract") and notified Elder of the failure, providing it an opportunity to correct the condition. While Elder attempted to correct the problem earlier in the year with several attempted remedial approaches, each failed to meet the temperature and humidity control requirements and were thus unsatisfactory. The most recent re-design proposed by Elder in August – by its own admission – would not result in the three rooms meeting the temperature and humidity control requirements. After having provided Elder with ample opportunity to correct, Honeywell had no choice but to proceed under Section 7.9 of the Contract and engage another consultant who is capable of meeting the design requirements.

  As of this date, HLAB has been remediated at a cost of $490,660, and Honeywell estimates that it will cost approximately $2.5 million to remediate the other two labs. Due to time constraints, Honeywell could only remediate a narrow scope of HLAB and does not have full use of the lab as originally intended. As the other two labs will undergo a complete remediation, the estimated cost to remediate those labs is higher than what was paid for HLAB.

---

[1] Pursuant to CDARA, Elder must provide written notice to Honeywell should it wish to inspect the property. Colo. Rev. State. § 13-20-803.5(2). Elder has thirty (30) days from its receipt of the herein Notice of Claim to complete such inspection. Id.

Honeywell will hold Elder responsible for all remediation costs (including those paid to Elder for its unsuccessful attempts to correct the problem, and to the remediation consultants and contractors), in addition to the loss of productivity and profit as a result of such areas being rendered unusable while the repairs are being performed.  For example, to date, Honeywell estimates $280,000 in lost productivity and downtime of the employees in the lab.

Kindly contact Rob Wolter, Director, Construction Project Management, at 312-615-6262 or robert.wolter@honeywell.com if you would like to schedule an inspection of the facility, or to discuss a resolution of this matter.

Very truly yours,

Daniel Kirschner,
Vice President of Global Real Estate

cc:     Robert A. Wolter
         Austin Dodder
         Ryan Brunk
         (via email)